# IN THE UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF MISSOURI
# (Springfield)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| 417 Rentals, LLC | ) | Case No. 17-60935-can11 |
| | ) | |
| Debtor | ) | Chapter 11 |
| | ) | |
| | ) | |
| City of Springfield, Missouri | ) | |
| | ) | |
| Movant | ) | |

## SUPPLEMENTAL OBJECTIONS TO CONFIRMATION

### Background

Springfield filed a "Motion to Compel 'Business-Model Statement'" on November 16, 2017. The court took up the motion on January 17, 2018. The court construed it as an "Objection to the Disclosure Statement and Objection to Confirmation of the Plan" and set the matter for hearing on March 21, 2018. Springfield now adds the following objections.

### False Statements about Neglected Properties

Since at least June 19, 2017, 1035 North Broadway Ave. has been a trashed-out, burned-out shell bearing a "Dangerous Building Warning" placard. (Doc 285,

Exhibit 2.) Yet, on October 5, 2017, 417 listed the property as having a current value of $37,700. (Doc 76-2).

Since at least July 5, 2017, 540 S. Warren has also been a trashed-out, burned-out shell bearing a "Dangerous Building Warning" placard. (Doc 372, generally; and, Exhibits S3 and S4, specifically.) Yet, on October 5, 2017, 417 listed the property as having a current value of $25,400. (Doc 76-2).

As they now exist, the properties are better characterized as liabilities, rather than valuable assets. Springfield has repeatedly notified 417 about both properties since the summer of 2017. (Doc 285 and Doc 372). 417 has repeatedly ignored the notifications. Yet, in the face of this, 417 represents to the court that it has: 1) "managed all of the properties"; 2) "kept all units maintained and winterized"; 3) continued "to make necessary repairs"; and, "responded to complaints regarding ordinance violations." (Doc 266, paragraph 3.)

As of this writing:

1. 417 has not abated dangerous-building conditions at 536 S. Broadway Ave., despite notice from Springfield;

2. 417 has not abated its trashed-out property at 2832 West Water St., despite notice from Springfield;

3. 417 has a tenant in 645 S. Grant Ave. despite holes in the ceiling, lack of electrical switches, bare wires, and lack of kitchen and bathroom faucets;

4. 417 has not abated the dangerous conditions at 536 S. Broadway, an open and unsecure property, despite notice from Springfield;

5. Springfield, on January 25, 2018, abated nuisance conditions at 1120 W. Mt. Vernon because, after notice, 417 did not; and,

6. Springfield has sundry open tickets concerning city-code violations at 417 properties.

### *11 USC § 1129*

417's false statements and lackluster maintenance efforts do not show good faith. 417's bad faith is grounds for denying plan confirmation. *11 USC § 1129(a)(3)*. The court should also deny confirmation under *11 USC § 1129(a)(5)*, as follows.

At the January 17, 2018 hearing before this Court, Mr. Gatley, Bankruptcy Counsel Ron Weiss, and 417 General Counsel Chris Greene were present. 417 had responded in writing to Springfield's motion. (Doc 233). 417 knew about Springfield's public-policy concerns. 417 even had the benefit of learned counsel to

appreciate the gravity of the concerns. That makes 417's response to two dangerous-building hearings even more baffling.

On January 11, 2018, six days before the hearing in bankruptcy court, Springfield conducted a dangerous-building hearing for 1035 N. Broadway Ave. Nobody showed up for 417.

On January 17, 2018, the afternoon after the bankruptcy hearing, Springfield conducted a dangerous-building hearing for 540 South Warren Ave. Nobody showed up for 417.

Per paragraphs K, L, and M of 417's disclosure statement, Chris Gatley will continue to operate 417. He will be its only officer and manager, and its sole member. As things were, so they will continue.

There is nothing in the disclosure statement or the plan that addresses Springfield's public-policy concerns. There is nothing to assure the public that Mr. Gatley will honor 417's public-policy obligations as expressed in dangerous-building, nuisance-abatement, overgrowth, property-maintenance, and other codes. There is nothing to assure the public that 417 will provide safe, clean, habitable housing for Springfield's citizens.

The record is to the contrary. If allowed to continue, 417's approach to land lording portends more dangerous-building, more nuisance-abatement, more overgrowth, and more property-maintenance issues to come. This fails the "only if" mandate of *11 USC § 1129(a)*.

### Springfield's Secured Liens

Springfield's perfected liens are not in the plan. They include claim numbers 48, 49, 50, and 68. Under Missouri law, they belong in the plan as secured claims with lien priority. "[T]he relative priorities of liens in bankruptcy . . . [are] to be determined according to the nonbankruptcy lien law"). *Wpg, Inc. v. IRS (in Re Wpg, Inc.)*, 266 B.R. 773, 774 (Bankr. D.D.C. 2001).

"[T]he State's lien for real estate taxes takes precedence over and is superior to all other liens whether prior or subsequent. [Stafford v. Fizer, 82 Mo. 393; Gitchell v. Kreidler, 84 Mo. 472; Williams v. Hudson, 93 Mo. 524, 6 S. W. 261.] The same rule has been applied to special tax bills and that regardless of the nature of the mortgagee's interest in the land. [Missouri Real Estate & Loan Co. v. Gibson, 282 Mo. 75, 220 S. W. 675; Keating v. Craig et al., 73 Mo. 507; Jaicks v. Oppenheimer, 264 Mo. 693, 175 S. W. 972; Morey Engineering & Const. Co. v. St. L. Artificial

Ice R. Co., 242 Mo. 241, 146 S. W. 1142, 40 L. R. A. (N. S.) 119.]" *Lucas v. Murphy*, 348 Mo. 1078, 1083, 156 S.W.2d 686, 689 (1941).

Nevertheless, 417's proposed plan would nullify Springfield's liens because they are not "created and/or recognized by this Plan." (See Plan paragraph 3.1). Springfield, therefore, also objects to plan confirmation on this ground.

### Ambiguity of "Allowed Unsecured Claims"

Plan paragraph 2.16 states that "Allowed Unsecured Claims" "approximate $41,022." The unsecured claim from Neale & Newman exceeds $48,000. The unsecured claim from Lowther Johnson exceeds $10,000. Springfield's unsecured claims exceed $22,000. There appear to be other unsecured claims in the claims registry. And, to the extent 417's property self appraisals overstate creditors' collateral values, there is much more unsecured debt than the plan acknowledges.

There is no way to know: 1) how 417 derived the $41,022 figure; 2) whose claims are recognized/ignored; or, 3) whether all claims are getting the same treatment under *11 USC § 1123(a)(4)*. Springfield, therefore, also objects to plan confirmation on this ground.

## Incorporated Objections

Springfield incorporates herein the objections stated in Doc 358 at paragraphs 5, 6, 7, 8, 9, 10, 15, 16, 17, 18, 20, 21, 23, and 24.

CITY OF SPRINGFIELD, MISSOURI

*/s/ Duke McDonald*
Duke McDonald
Missouri Bar #36265
Assistant City Attorney
840 Boonville
Springfield, Missouri  65802
(417) 864-1645
(417) 864-1551 fax
dmcdonald@springfieldmo.gov
ATTORNEY FOR MOVANT

Service Certificate

I certify that on February 27, 2018, the foregoing "Supplemental Objections to Confirmation" were filed with the Court under its ECF System and were served on said date by electronic mail directed to all parties entitled to electronic notice.

*/s/ Duke McDonald*
Duke McDonald