## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MISSOURI

In re:

**417 Rentals, LLC**

Case # 17-60935-11
Chapter 11

**Debtor.**

## MOTION FOR ORDER AUTHORIZING SALE OF REAL ESTATE

**COMES NOW,** 417 Rentals, LLC (Debtor) and moves the Court for an Order authorizing the sale of certain real estate, formerly property of the estate, and in support thereof states:

1.     On August 25, 2018 the Debtor filed this reorganization proceeding pursuant to Chapter 11 of Title 11 of the United States Code.

2.     The scheduled assets included certain real property located at 2107 E. Cherry, Springfield, Missouri (the Property), commonly known as the Timberwood Apartments. The property was encumbered by a first deed of trust on behalf of Guaranty Bank (the Bank).

3.     On or about January 19, 2018 the Debtor and the Bank entered into a stipulation for relief from the stay to enable the Property to be sold to Backwoods Trust, LLC. On February 1, 2018 the Court entered its order approving the stipulation between the Debtor and the Bank.

4.     A contract was thereafter entered into for the sale of the property to Backwoods Trust, LLC, a copy of which is attached hereto and marked as Exhibit A. The sale is supported by the Debtor, the Bank, the buyer and the guarantor.

5.     All of the terms of the sales contract have been completed and the transaction is ready to close, however Fidelity Title Company has refused to issue a title policy without an order of this Court, notwithstanding the relief from stay order of February 1, 2018.

6.      The Debtor is therefore requesting the Court enter an order approving the sale to Backwoods Trust, LLC as described herein, or declaring that no order is required as the real estate to be sold is no longer property of the estate.

7.      Unless the closing occurs immediately, the buyer will not complete the sale and the Debtor is therefore requesting that an expedited hearing occur within ten (10) days and that notice be limited to Guaranty Bank and the United States Trustee.

**WHEREFORE**, 417 Rentals, LLC, Debtor, prays the Court for an order approving the sale described herein to Backwoods Trust, LLC, or in the alternative, an order declaring that no approval of the sale is necessary as a result of the Court's Order of February 1, 2018, granting relief from the automatic stay, and for such other and further relief as is just and proper.

Respectfully submitted,

**BERMAN, DeLEVE, KUCHAN & CHAPMAN, LLC**

By: */s/ Ronald S. Weiss*
    Ronald S. Weiss    MO #21215
    Joel Pelofsky    MO #17929
    1100 Main, Suite 2850
    Kansas City, Missouri 64105
    (816) 471-5900 Phone / (816) 842-9955 Fax
    Email: rweiss@bdkc.com
    Email: jpelofsky@bdkc.com
**ATTORNEYS FOR DEBTOR**

## CERTIFICATE OF SERVICE

I certify that the foregoing Motion was electronically filed with the Clerk of the Bankruptcy Court on this 29th day of March, 2018 and was served electronically on those parties receiving electronic notice through the Court's CM/ECF system, with an identical copy delivered by First Class, United States Mail, postage pre-paid to the following:

Lloyd E. Mueller                          Gary E. Bishop
Office of the U.S. Trustee                Mann, Walter, Bishop & Sherman, PC
400 E 9th Street, Suite 3440             1112 East Walnut St.
Kansas City, MO 64106                     Springfield, MO 65801
**U.S. TRUSTEE**                          **ATTORNEY FOR GUARANTY BANK**


_/s/ Ronald S. Weiss_
Ronald S. Weiss, MO #21215
Attorney for Debtor

dotloop signature verification
DigiSign Verified: 7236FFC2-304C-4282-98D7-A4602779A438

# Exhibit A


**Missouri REALTORS**

## Commercial and Industrial Real Estate Sale Contract
*This Contract has important legal and tax consequences. If not understood, consult your attorney before signing.*

1  This Contract is made between _____ 417 Rentals _____ ("**Seller**"),
2  and _____ Backwoods Trust _____ 881220209045 021318 _____ ("**Buyer**"). The "**Effective**
3  **Date**" shall be the date adjacent to the signature of the last party to sign this Contract or the Counter Offer attached hereto *(if any)*.

4      **1. PROPERTY.** Seller agrees to sell and convey to Buyer and Buyer agrees to purchase from Seller, the following described
5  real estate *(if no legal description is included below, then legal description on Seller's deed(s) to govern, which may be confirmed*
6  *by the Survey, if any, pursuant to Section 6 below).* Such real estate, together with all existing improvements located thereon
7  (including all equipment and fixtures not specifically excluded below) and all rights, privileges and easements appurtenant thereto,
8  and any items of personal property specifically included below, are collectively referred to herein as the "**Property.**" Legal
9  Description is: _____

10 _____ ☐ *(Check Box if legal description attached)*
11 2107 East Cherry _____ Springfield _____ MO 65802 _____ Greene
12 **Street Address** _____ **City** _____ **Zip Code** _____ **County**

13     **2. INCLUSIONS AND EXCLUSIONS.** *Note: This Contract, and not the Seller's Disclosure Statement, multiple listing*
14 *service or other promotional material, provides for what is included in this sale.* The Purchase Price and the Property includes
15 (but is not limited to) all of the following (if any) which now exist and are located on the real estate, all of which Seller warrants to
16 convey free and clear: all buildings and structures, and all personal property used in the operation of any such buildings, structures
17 or other improvements, including *(if any)* all equipment, apparatus, machinery and appliances, and all mechanical, electrical,
18 plumbing, heating, ventilating and air conditioning, gas, water, lighting, power, laundry, garbage disposal, fire prevention, elevator,
19 antenna and pool systems, fixtures and equipment, together with all floor coverings, storm windows and doors, screens and awnings,
20 and keys. **Seller to execute and deliver to Buyer at Closing a bill of sale with warranty of title for all included personal**
21 **property.**

22 *To avoid misunderstanding, list below, as "included" or "excluded", any items which may be subject to question.*

23 The following items are also **included** in the sale *(e.g., list any offsite items of equipment or machinery or other tangible or intangible*
24 *personal property or proprietary information, such as business name or software, to be included)*: _____
25 _____

26 The following items are **excluded** from the sale *(e.g., list any items which are reserved, leased or otherwise not owned by Seller and*
27 *all items which are not intended to be included)*: _____
28 _____

29 The Property shall be subject to the Permitted Exceptions *(defined in Section 6 below)*, specifically including the following existing
30 leases or tenancies (subject to Buyer's review and approval rights per Section 7 below): _____
31 _____

32     **3. PURCHASE PRICE.**
33 $_____ 920000 _____ is the "**Purchase Price**" for the Property and is to be paid by Buyer as follows:
34 $_____ as "**Earnest Money**" in the form of *(check one)*:
35 ☐ personal check ☐ cashier's check ☐ other _____, to be supplied *(check one)*:
36 ☐ at the time of original delivery hereof as set forth at the Receipt and Acknowledgement following the end of this Contract; or
37 ☐ _____;
38 and in either case, to be deposited not later than ten (10) banking days after the Effective Date in an escrow account with
39 _____ ("**Escrow Agent**").
40 **Unless otherwise expressly agreed to herein, any interest earned on such deposit shall be added to and form part of the**
41 **Earnest Money.** If sale is closed, Earnest Money to apply toward the Purchase Price. Buyer shall pay the balance of the Purchase
42 Price by cashier's check or other form of funds acceptable to Closing Agent ("**Funds**") at Closing.

43     **4. CLOSING.** Subject to the terms of this Contract, this sale will be closed (meaning the exchange of the Deed for the Purchase
44 Price, together with all other documents and Funds required by this Contract, the "**Closing**") at the office of
45 _____ Preferred Title _____ ("**Closing Agent**") in
46 _____ Springfield _____, MO _____, on _____ March _____ 30th _____, 20 18 _____ (the "**Closing Date**").
47 **City** _____ **State** _____ **Month** _____ **Day**
48 Possession and all keys will be delivered to Buyer at: *(check one)* ☑ Closing or ☐ other _____.
49 *Note: Attach a rider If possession is to be transferred other than as of Closing: See e.g., COM-3000 or 3010 (Commercial Lease*
50 *Single or Multi-Tenant); MSC-2080R (Possession by Buyer Prior to Closing); MSC-2090R (Possession by Seller After Closing); MSC-*
51 *2085R (Limited Purpose Entry by Buyer Prior to Closing).*
52 *Brokers are not responsible for delivery of keys. Buyer should change locks following possession.*

53 Unless specified otherwise, Seller warrants that the Property will be vacant as of the time of Closing *(e.g. except for tenant(s) in*
54 possession pursuant to any lease or other agreement identified above and/or approved pursuant to this Contract), and in its present
55 condition (together with any improvements or repairs required by this Contract), ordinary wear and tear excepted. *(Note: If the*
56 *Property is to remain tenant occupied, then the parties should complete and attach an appropriate rider).*

COM-2000

dotloop signature verification: [illegible]
DigiSign Verified: 7236FFC2-304C-4282-98DC-A1600760A133

57   **5.  FINANCING/APPRAISAL.** *(Check all applicable boxes)*
58   *Note:  A lender's loan approval process may not include a traditional appraisal.  Different types of "appraisals" are available and*
59   *underwriting requirements vary.  If Buyer's performance under this Contract is to be independently conditioned upon the Property*
60   *appraising at the Purchase Price, Buyer should check box A and complete the following.*
61   ☐ **A.  Appraisal.**  Buyer's performance under this Contract is contingent upon the Property appraising at not less than the Purchase
62   Price, by an appraiser selected by Buyer and licensed by the State of Missouri (or selected by Buyer's lender if this Contract is also
63   contingent on financing).  If the appraised value is less than the Purchase Price, Buyer may request a reduction in the Purchase Price
64   (but not less than the appraised value).  If Buyer desires to act on this contingency, Buyer must deliver a written request (and a copy
65   of the appraisal) to Seller no later than _____ *days (25 if none stated)* after the Effective Date.  *Note: MSC-2020N Appraisal Notice*
66   *(Part A) may be used for this purpose.*  If Buyer does not timely deliver the Appraisal Notice to Seller, this contingency shall be
67   deemed waived.  If the parties do not reach a written agreement to reduce the Purchase Price as requested within _____ *days (5 if*
68   *none stated)* after delivery of the Appraisal Notice to Seller (the "**Appraisal Resolution Deadline**"), then this Contract shall
69   automatically terminate (with Earnest Money returned to Buyer, subject to §8) unless Buyer waives this contingency by delivering
70   Notice thereof to Seller on or before the Appraisal Resolution Deadline.  *Note: MSC-2020N (Part C) may be used for this purpose.*
71   If the Purchase Price is reduced, the loan amount in Buyer's financing contingency (*if any*) shall be proportionately reduced.
72   ☐ **B. Not Contingent Upon Financing.**  Although not a condition to performance, Buyer may finance any portion of Purchase Price.
73   ☑ **C. Nonconventional.**  *Attach Government Loan (MSC-2011R) Seller Financing (MSC-2012R) or Assumption (MSC-2013R) Rider.*
74   ☐ **D. Conventional.**  Buyer agrees to do all things reasonably necessary, including but not limited to completing a loan application,
75   paying for a credit report, appraisal and any other required fees, providing all information required by lender and otherwise cooperating
76   fully to make a good faith effort to obtain the financing described below.  If Buyer does not deliver Notice, provided by Buyer's lender,
77   to Seller of Buyer's inability to obtain a loan on the terms described below, by 5:00 p.m. on the date (the "**Loan Contingency Deadline**")
78   which is _____ *days (30 if none stated)* after the Effective Date, then this contingency shall be deemed waived and Buyer's performance
79   under this Contract shall no longer be conditioned upon Buyer obtaining financing; provided however, if such lender will not give Buyer
80   such Notice, then Buyer may directly notify Seller (on or before the Loan Contingency Deadline) by providing a notarized affidavit that
81   Buyer has timely complied with all of the terms of this paragraph and that despite request, Buyer was unable to obtain such Notice from
82   lender (*e.g., see MSC-2010A "Buyer's Financing Contingency Affidavit" or MSC-2010B "Non-Individual Buyer's Financing*
83   *Contingency Affidavit"*).  If Buyer has complied with the terms of this paragraph and has timely provided Notice to Seller of Buyer's
84   inability to obtain a loan on the terms described below, then this Contract shall terminate with Earnest Money to be returned to Buyer
85   (subject to §8).
86   *(Complete one or both)* Loan amount: _____ % of the Purchase Price, *or* $ _____ .
87   Initial interest rate not to exceed: _____ %.   Amortization term _____ years.
88   Rate Type *(check one):* ☐ Fixed  ☐ Adjustable  ☐ Other: _____
89   Other terms *(N/A if blank):* _____
90   *Note:  If the Loan Contingency Deadline passes without a termination, Buyer remains obligated under this Contract and must have*
91   *available all Funds required to close.  A "loan commitment" or "preapproval" does NOT guarantee that Buyer's loan will actually*
92   *fund.*
93   ☑ **E.  Other Financing and/or Terms:**
94   Contract contingent upon assumption of sellers loan at Guaranty Bank. (09/29/2009 880,000
95   Guaranty Bank 44040)

96   **6.  TITLE AND SURVEY.**  At Closing, Seller shall transfer marketable title to the Property subject only to the Permitted
97   Exceptions, as directed by Buyer, by *(check one):* ☑ general warranty deed ☐ special warranty deed, or
98   ☐ other _____ (the "**Deed**"), properly executed and in recordable form.
99   Within _____ days *(10 days if none stated)* after the Effective Date *(check applicable box below):*
100  ☐ **A.** Seller shall deliver to Buyer a commitment (the "**Title Commitment**") to issue a current ALTA owner's policy of title
101  insurance in the amount of the Purchase Price (the "**Owner's Policy**") both at **Seller's cost**.
102  ☑ **B.** Seller shall deliver to Buyer a Title Commitment to issue an Owner's Policy (**cost of both to be split 50/50 between parties**)
103  ☐ **C.** Seller shall deliver to Buyer a Title Commitment, at **Seller's cost**, to issue an Owner's Policy at **Buyer's cost**.
104  *(Specify if otherwise)* _____ .
105  ☐ **D.** Buyer may order a Title Commitment to issue an Owner's Policy (**both at Buyer's cost**).
106  The Title Commitment shall be issued by the Closing Agent, unless otherwise specified.  If Seller already has a survey of the Property
107  in Seller's possession, Seller shall promptly deliver a copy to Buyer after the Effective Date.  Buyer, at its sole option, expense and
108  liability may also obtain a survey of the Property ("**Survey**") to determine if there are any defects, encroachments, overlaps, boundary
109  line or acreage discrepancies, or other adverse matters that may be disclosed.  Buyer acknowledges that all surveys are not alike
110  *Note:  Buyer should consult with its lender and the title company as to their survey requirements and in order to provide full*
111  *survey coverage to Buyer.  MSC-2500 (Survey/Elevation Certificate Order Form) may be used to indicate Buyer's selection as to*
112  *the type of survey or service to be provided and the company which is to perform the same, or to indicate Buyer's waiver of this*
113  *right.*
114  Buyer shall have _____ days *(20 days if none stated)* after receipt of the Title Commitment to review the same, including all
115  subdivision, use and other restrictions, rights of way and easements, and all other recorded documents referenced therein which
116  Buyer may desire to obtain (the "**Review Period**"), and to state to Seller in writing any objections which Buyer has to any matters
117  shown or referred to therein and/or the Survey ("**Objections**"); provided, however, that if box 6D is checked, then Buyer shall have

dotloop signature verification
DigiSign Verified: 7236FFC2-304C-4282-98DC-A16907361A42

118    _____ (*20 days if none is stated*) after the Effective Date (which shall be deemed to be the "Review Period") to review all such
119    matters and deliver Notice of any Objections to Seller.  Buyer's failure to timely notify Seller of any Objections within the applicable
120    Review Period will constitute a waiver by Buyer of any Objections.  *Note: MSC-2055N (Title & Survey Notice) may be used to*
121    *facilitate the delivery of any Title or Survey Objections, responses thereto and the resolution thereof.*

122    If Buyer does timely object, Buyer must also deliver a copy of the Survey and/or Title Commitment to Seller pertaining to such
123    Objections.  Seller shall have _____ days (*7 days if none stated*) from receipt of Buyer's Notice of Objections to agree in writing to
124    correct the same prior to Closing at Seller's expense.  If Seller does not so agree, then this Contract shall automatically terminate
125    unless Buyer, within _____ additional days (*3 days if none stated*) after Buyer's receipt of Seller's response to Buyer's Objections,
126    agrees in writing to accept the title without correction of such Objections.  *Note: For purposes of this subparagraph, if Seller fails*
127    *to timely respond to Buyer's Objections, then Seller shall be deemed to have refused to agree to correct any such Objections.*  If
128    the Contract is terminated under this paragraph, then the Earnest Money is to be refunded to Buyer and if any defect objected to
129    causes a failure of marketable title, then Seller shall be liable for survey and title examination charges.  Seller shall be liable for
130    clearing any exception to title that arises between the Effective Date and Closing, and any existing lien (other than general taxes and
131    any installments of special taxes or assessments to be prorated at Closing) may be paid out of the Purchase Price proceeds.  Subject
132    thereto, any item shown on the Title Commitment or Survey (or which could have been shown on a survey) and to which Buyer does
133    not timely submit an Objection during the Review Period, or for which Buyer waives Buyer's Objections as set forth herein, and
134    specifically including all laws and zoning ordinances, are collectively referred to herein as the "**Permitted Exceptions**".  If
135    the Owner's Policy must include mechanic's lien and inflation coverage, unless the title company issuing the Owner's Policy does not
136    make available such coverage(s), or unless otherwise provided herein.  Buyer is responsible for the cost of any lender's policy of title
137    insurance to be issued.

138    **7.   INSPECTIONS.**  Buyer may (subject to the conditions expressly set forth herein), at Buyer's option and expense, obtain
139    written inspection reports ("**Reports**"), from any qualified inspector, contractor, appraiser or consultant that Buyer or its lender may
140    engage, of the Property as deemed necessary by Buyer or its lender, including but not limited to the condition or presence (*if any*)
141    of:

| | | | | | |
|---|---|---|---|---|---|
| 142 | * environmental hazards; | 148 | well, sewer, septic and waste | 154 | systems and equipment, |
| 143 | * mold; | 149 | water treatment systems; | 155 | including appliances; |
| 144 | * termite and wood destroying | 150 | * roof and other | 156 | * heating and air conditioning |
| 145 | insect infestation/damage; | 151 | structural improvements; | 157 | systems and equipment; and |
| 146 | * flues and gas lines; | 152 | * leaks and exterior drainage; | 158 | * soil condition reports; |
| 147 | * plumbing, including water | 153 | * electrical and mechanical | | |

159    and/or copies of records retained by Seller ("**Records**"), as are necessary and appropriate for the use and occupancy of the Property,
160    or reflecting the income or expenses of the Property (*if any*), including but not limited to:

| | | | | | |
|---|---|---|---|---|---|
| 161 | * plans and drawings; | 168 | * books; | 175 | * financial records; |
| 162 | * specifications; | 169 | * computer records; | 176 | * permits; |
| 163 | * square footage; | 170 | * reports; | 177 | * licenses; |
| 164 | * insurance reports; | 171 | * leases and other occupancy | 178 | * approvals; |
| 165 | * soil condition reports; | 172 | agreements; | 179 | * flood plain data; |
| 166 | * engineering reports; | 173 | * contracts; | 180 | * zoning regulations; |
| 167 | * environmental reports; | 174 | * rent rolls; | 181 | * general taxes; |

182    and/or documents from or for each tenant of the Property (*check all that apply*):
183        ☐   Estoppel Certificate;
184        ☐   Subordination, Non-Disturbance and Attornment Agreement (*see, e.g.*, COM-3020);
185        ☐   Other (*Specify*)_____.

186    Seller agrees to permit Buyer and/or Buyer's lender and their representatives to enter the Property during reasonable business hours
187    and upon reasonable advance notice to Seller to access such Records and to perform such inspections; provided that such
188    investigations do not unreasonably disrupt the operation of the Property or Seller's business, and/or cause any material or permanent
189    Property damage.  Buyer acknowledges that neither Seller nor anyone on Seller's behalf has made, nor do they hereby make, any
190    warranties, guarantees or representations as to the past, present or future condition, income, expenses, operation or any other matter
191    or thing affecting or relating to the Property, excepting only as may be expressly set forth in this Contract.  The Records and the
192    results of any inspection or test and the Reports and conclusions of Buyer and Buyer's representatives shall be kept confidential
193    (except as required by law) by Buyer and Buyer's representatives; provided that Buyer may disclose such items to Buyer's attorney,
194    accountants, lenders and other parties reasonably necessary to enable Buyer to evaluate the Property.  Buyer shall directly maintain,
195    and shall cause any contractor or consultant engaged by it or its lender to maintain, adequate insurance at all times while performing
196    any inspection at the Property.  Buyer agrees to immediately repair any damage to the Property, and to indemnify and hold Seller
197    harmless from and against all claims, costs, demands and expenses, including without limitation reasonable attorney fees and court
198    costs, resulting from these inspections.  Buyer's obligations under this Section shall survive termination of this Contract.

199    Buyer shall furnish to Seller a written list of any unacceptable condition(s) pertaining to the Report(s) or the Records (the "**Inspection**
200    **Notice**", *See COM-2050*) within _____ days (*30 days if none stated*) after the Effective Date (the "**Inspection Period**").  *Note:*
201    *Buyer is allowed to submit only 1 Inspection Notice during the Inspection Period.  The Inspection Notice should include all*
202    *matters unacceptable to Buyer.*  If Seller has not received a written Inspection Notice by the end of the Inspection Period, Buyer
203    shall be deemed to be satisfied with the results of such inspection(s).  If timely Inspection Notice is given, it shall state whether:
204    (**1**) Buyer is satisfied with all the inspections; (**2**) Buyer intends that any unacceptable conditions are to be satisfied by Seller; or
205    (**3**) Buyer is terminating the Contract, with the Earnest Money to be returned to Buyer.  Failure to obtain any inspection shall

dotloop signature verification [icon]
DigiSign Verified: 7236FFC2-304C-4282-98D3-A1699750C438

206    constitute a waiver and acceptance by Buyer of any condition any inspection may have disclosed.

207    If this Contract is not terminated as provided above, Seller shall have _____ days *(7 days if none stated)* after Seller's receipt of the
208    Inspection Notice (the "**Initial Response Period**") in which to respond in writing to Buyer's Inspection Notice. (*Note: For purposes*
209    *of this subparagraph, if Seller fails to timely respond to Buyer's Inspection Notice, then Seller shall be deemed to have refused to*
210    *agree to correct any alleged defects or to provide a monetary adjustment at Closing).*  The parties shall have an additional _____
211    days *(3 days if none stated)* after Buyer's receipt of Seller's response to Buyer's Inspection Notice to reach an agreement in writing
212    as to who will complete and pay for the correction of the defects, or as to a monetary adjustment at Closing in lieu of correction of
213    the defects, or the Contract is to be deemed to be automatically terminated and the Earnest Money shall be returned to Buyer;
214    provided, however, that either a written commitment by Seller to correct those items submitted by Buyer for correction during the
215    Inspection Period at Seller's expense, or a written commitment by Buyer to accept the Property without correction of any
216    unacceptable condition(s) which Buyer originally objected to, shall constitute an "agreement" for purposes of this paragraph, even
217    after earlier negotiation failed to produce an agreement. *Note: A monetary adjustment may affect the terms of Buyer's loan (e.g.,*
218    *down payment, interest rate).  Failure to correct a physical defect may affect Buyer's ability to obtain any required occupancy*
219    *permit.*

220    All Brokers may be present during any inspections and the "walk-through". Such presence shall only serve to assist in the
221    coordination of and compliance with the terms of this Contract and shall not in any way be interpreted as providing the Brokers with
222    a special knowledge or understanding of any Reports, Records or other inspection results. The parties will rely only upon the written
223    inspection results received directly from the appropriate expert(s), and acknowledge that Brokers have no expertise or responsibility
224    in determining any defects that may be disclosed by any inspections, warranties or services. Buyer acknowledges that: **(1)** Buyer
225    will not rely upon Brokers in any way as to the selection or engagement of a particular company for any inspection, warranty or
226    service; **(2)** inspections, warranties and services may be offered by more than one company and the determination to select and
227    engage a particular company and the completeness and satisfaction of any such inspection, warranty or service is the sole
228    responsibility of Buyer; and **(3)** when choosing to engage a lender, inspector, warranty, service, title or repair company, or any other
229    service provider, Buyer should consider, but not be limited by, the existence of errors and omissions insurance, liability insurance,
230    business and professional licensure, membership in professional associations and years of experience. Buyer is encouraged to utilize
231    form MSC-2045 ("Buyer's Inspection Authorization") to facilitate and coordinate this process. *Note: Pursuant to Missouri law, a*
232    *real estate licensee, including the broker(s) assisting Buyer and/or Seller and their respective licensees identified in the Brokerage*
233    *Relationship disclosure Section below (collectively, the "Brokers"), shall be immune from liability for statements made by*
234    *engineers, land surveyors, geologists, environmental hazard experts, wood destroying inspection and control experts, termite*
235    *inspectors, mortgage brokers, home inspectors, or other home inspection experts unless: (1) the statement was made by a person*
236    *employed by the licensee or the Broker with whom the licensee is associated; (2) the person making the statement was selected*
237    *and engaged by the licensee; or (3) the licensee knew prior to Closing that the statement was false or the licensee acted in reckless*
238    *disregard as to whether the statement was true or false. A licensee shall not be the subject of any action and no action shall be*
239    *instituted against a licensee for any information contained in any Seller's disclosure furnished to Buyer, unless the licensee is a*
240    *signatory to such or the licensee knew prior to Closing that the statement was false or acted in reckless disregard as to whether*
241    *the statement was true or false. A licensee acting as a courier of documents referenced in this section shall not be considered to*
242    *be making the statements contained in such documents.*

243    **8.    DISPOSITION OF EARNEST MONEY AND OTHER ESCROWED FUNDS AND DOCUMENTS.** Regardless of
244    any other terms of this Contract regarding forfeiture or return of Earnest Money, the Escrow Agent and/or Closing Agent (as the
245    case may be, "**Escrow Holder**") shall not distribute the Earnest Money or any other escrowed funds, personal property or documents
246    held by it ("**Escrow Items**") without the written consent of all parties to this Contract (signature on Closing Statement may constitute
247    such consent). Absent such written consent, Escrow Holder shall continue to hold said Escrow Items in escrow until: **(1)** Escrow
248    Holder has a written release signed by all parties consenting to its disposition; **(2)** a civil action is filed to determine its disposition
249    (including an interpleader filed by Escrow Holder), at which time payment and delivery of the Earnest Money and/or any other
250    Escrowed Items may be made into court, less any attorney fees, court costs and other legal expenses incurred by Escrow Holder in
251    connection therewith; **(3)** a court order or final judgment mandates its disposition; or **(4)** as may be required by applicable law. The
252    parties specifically acknowledge and agree that whenever ownership of the Earnest Money or any other escrowed funds, received
253    by a Missouri licensed real estate broker or salesperson, is in dispute between the parties, said Escrow Holder is required by
254    §339.105.4 RSMo to report and deliver the moneys to the State Treasurer within 365 days of the initial projected Closing Date.
255    Escrow Holder is hereby authorized to report and deliver any such moneys to the State Treasurer at any time following sixty (60)
256    days after the initial projected Closing Date (absent receipt of the written consent of all parties as set forth above). *Note: An Escrow*
257    *Holder who is not a licensed real estate broker or salesperson is not necessarily bound by certain Missouri statutes and regulations*
258    *which apply to earnest money deposits, or by the terms of this Contract regarding any Escrow Items. If Escrow Holder requires*
259    *that a separate escrow agreement be executed by the parties, then those separate terms may supersede the foregoing and control.*
260    In any reference in this Contract (including any attached rider) to the return of Earnest Money to Buyer, Buyer agrees that any
261    expenses incurred by or on behalf of Buyer may be withheld by Escrow Holder and paid to the applicable service provider(s).

262    **9.    LOSS; CONDEMNATION.** Risk of loss to improvements on the Property shall be borne by Seller until Closing. Seller
263    agrees to maintain Seller's current fire and extended coverage insurance *(if any)* on the Property until Closing. Seller shall do
264    ordinary and necessary maintenance, upkeep and repair to the Property through Closing. If, before Closing, all or any part of the
265    Property is taken by eminent domain, or if a condemnation proceeding has been filed or is threatened against the Property or any
266    part thereof, or if all or any part of the Property is destroyed or materially damaged, then Seller shall   promptly provide written

Notice to Buyer of any such event, together with copies of any written communications to and from the condemning authority and/or insurer (as the case may be), the policy limits and (if known) the amount of proceeds payable on account of any physical damage to the Property, and whether Seller intends to restore, prior to the scheduled Closing Date, the Property to its condition as of the Effective Date. If Seller restores the Property to its prior condition before the scheduled Closing Date, then Buyer and Seller shall proceed with the Closing. *Note: MSC-2510N (Property Damage Notice) and MSC-2520N (Taking Notice) may be used to deliver Notice of any Property damage (or Taking) and any election made in connection therewith.*

If the Property is not to be restored to its prior condition by Seller before the scheduled Closing Date, then Seller shall promptly provide Buyer with a copy of any policy(ies) of insurance (or authorize that it be made available), the name and number of the agent for each policy and written authorization (*if needed*) for Buyer to communicate with the insurer. Buyer may then either: (1) proceed with the transaction and be entitled to all insurance money (and/or condemnation payments and awards), if any, payable to Seller relating to any physical damage caused to the Property, in which case the amount of any such payments theretofore made to Seller (plus the amount equal to any deductible not covered by insurance) shall be a credit against the Purchase Price otherwise payable by Buyer at Closing, and Seller shall assign to Buyer all such remaining claims and rights to or arising out of any such casualty or taking, including the right to conduct any litigation with respect thereto; or (2) rescind the Contract, and thereby release all parties from further liability hereunder, in which case the Earnest Money shall be returned to Buyer. Buyer shall give written Notice of Buyer's election to Seller within 10 days after Buyer has received written Notice of such damage or destruction and the aforesaid insurance information, and Closing will be extended accordingly, if required *(i.e., if such information is not received by Buyer more than 10 days prior to the date scheduled for Closing)*. Seller shall not settle any claim regarding a taking of any part of the Property by eminent domain or condemnation prior to the Closing (or earlier termination of this Contract) without the prior written approval of Buyer, which approval shall not be unreasonably withheld, conditioned or delayed. Failure by Buyer to so notify Seller shall constitute an election to rescind this Contract. A rescission hereunder does not constitute a default by Seller. If Buyer elects to proceed to Closing and Seller has agreed to finance a part of the Purchase Price, then Buyer must use any insurance proceeds to restore the improvements. The provisions of this Section shall survive Closing.

**10. ADJUSTMENTS AND CLOSING COSTS.** Adjustments, charges and Closing costs are agreed to be paid by the parties, with sufficient Funds to satisfy their respective obligations hereunder, as of the date of Closing (unless otherwise expressly set forth herein or in a rider hereto). Such matters and the following prorations shall be itemized on a closing statement prepared by Closing Agent and executed by Buyer and Seller at or prior to Closing (the "**Closing Statement**"), together with all other documents required of them pursuant to this Contract and/or customarily required by Closing Agent to complete the Closing. The parties hereby specifically permit the involved Broker(s) to obtain and retain copies of both Buyer's and Seller's Closing Statements as required by 20 CSR 2250-8.150. *Note: Buyer is cautioned to always call to confirm instructions before sending any Funds via wire transfer.*

**Buyer shall pay for** (*where applicable*): (a) hazard insurance premium(s) from and after Closing; (b) flood insurance premium if required by lender; (c) fees for the Survey or any appraisal ordered by or for Buyer; (d) title company charges (including Closing, recording and escrow fees) customarily paid by a buyer in the County where the Property is located; (e) charges imposed by lender (*e.g.*, appraisal and credit report fees, loan discount "points", loan origination or funding fees and other loan expenses) unless specifically agreed to be paid by Seller; (f) building, termite, environmental and any other inspections ordered by Buyer; (g) special taxes, special subdivision and any other owner association assessments ("**Special Assessments**") levied after Closing; (h) the value of any propane gas left in any propane tank at the Property (based on current market rate charged by supplier); (i) agreed upon repairs; (j) applicable municipal occupancy permit fee; and (k) any commission or other compensation due from Buyer to the Broker(s).

**Seller shall pay for (where applicable):** (a) existing liens (recorded and unrecorded) and existing loans on the Property (if not assumed by Buyer); (b) expenses of Buyer's loan agreed to by Seller; (c) title company charges (including Closing, releasing and escrow fees) customarily paid by a seller in the County where the Property is located; (d) required municipal, conservation district and fire district inspection fees; (e) so-called "one-time" Special Assessments levied before Closing; (f) security deposits and prepaid rents and expenses or Income (*as defined below*) collected by or on behalf of Seller (to be credited to Buyer at Closing); (g) agreed upon repairs; and (h) any commission or other compensation due from Seller to the Broker(s).

**Buyer and Seller shall prorate and adjust between them on the basis of 30 days to the month as of the date of Closing (Seller to pay for day of Closing):** (a) current rents collected by or on behalf of Seller (Seller to receive rent for day of Closing), with rents delinquent over 30 days to be collected by Seller and not adjusted; (b) all other current profits, royalties, tolls or earnings arising out of or in connection with the Property ("**Income**"), with Income delinquent over 30 days to be collected by Seller and not adjusted. Buyer shall, upon receipt, turn over to Seller any rents or Income received by Buyer after Closing pertaining to any time period prior to Closing and for which no adjustment has been made, after deducting and crediting any amounts due to Buyer for any time period after Closing; (c) general taxes (based on assessment and rate for current year, if both are available, otherwise based on previous year); (d) installments of Special Assessments becoming due during the calendar year of Closing; (e) subdivision upkeep assessments and monthly association fee; (f) interest (if Buyer assumes an existing loan per Section 5 above); and (g) flat rate utility charges (including water, sewer and trash).

**11. BINDING EFFECT/ASSIGNABILITY/SECTION 1031 EXCHANGE.** This Contract is binding on and shall inure to the benefit of the parties and their respective heirs, successors and permitted assigns. Buyer may not assign this Contract without the written consent of Seller if: (a) Seller is taking back a note and deed of trust as part of the Purchase Price, or (b) Buyer is assuming the existing note. Assignment does not relieve the parties from their obligations under this Contract. The parties acknowledge that Buyer may desire to acquire, and/or Seller may desire to sell, the Property as part of a like-kind exchange

dotloop signature verified. ...
DigiSign Verified: 7236FFC2-304C-4282-98DC-A1699 ...

327  ("**Exchange**") pursuant to §1031 of the Internal Revenue Code (the "**Code**"). Each party agrees to cooperate with the other and its
328  qualified intermediary/ third-party facilitator in connection with any such Exchange, provided however, in no event shall Closing
329  hereunder be delayed or affected by reason of an Exchange, nor shall consummation of an Exchange be a condition precedent or
330  subsequent to any obligations of the parties under this Contract.  No party shall be required to incur any cost or expense, or to acquire
331  or hold title to any real property, for purposes of consummating an Exchange at the request of another party (the "**Requesting**
332  **Party**").  In addition, no party shall, by this Contract or acquiescence to an Exchange by a Requesting Party, have its rights or
333  obligations hereunder affected in any manner, or be deemed to have warranted to a Requesting Party that such Exchange in fact
334  complies with the Code. A Requesting Party shall reimburse each other party for any cost or expense incurred by such non-requesting
335  party with respect to an Exchange.

336  **12. ENTIRE AGREEMENT/MODIFICATION.**  This Contract and any Rider(s) or other attachments hereto (*if any*)
337  constitute the entire agreement between the parties hereto concerning the Property. There are no other understandings, written or
338  oral, relating to the subject matter hereof.  This Contract may not be changed, modified or amended, in whole or in part, except in
339  writing signed by all parties.

340  **13. DEFAULT/REMEDIES.**  If either party defaults in the performance of any obligation under this Contract, the party
341  claiming a default shall notify the other party in writing of the nature of the default and the party's election of remedy. The notifying
342  party may, but is not required to, provide the defaulting party with a deadline for curing the default.  Following a default by either
343  Seller or Buyer, the other party shall have the following remedies:

344  **A. Seller Defaults.**  If Seller defaults, Buyer may: **(1)** specifically enforce this Contract and recover damages suffered by
345  Buyer as a result of the delay in the acquisition of the Property; **(2)** terminate this Contract by written Notice to Seller, and agree to
346  release Seller from liability upon Seller's release of the Earnest Money and reimbursement to Buyer for all actual costs and expenses
347  incurred by Buyer (and which are to be specified in Buyer's Notice of default) as liquidated damages and as Buyer's sole remedy
348  (the parties recognizing that it would be extremely difficult, if not impossible, to ascertain the extent of actual damages caused by
349  Seller's breach, and that return of the Earnest Money plus all actual costs and expenses incurred by Buyer represents as fair an
350  approximation of such actual damages as the parties can now determine);  or **(3)** pursue any other remedy and damages available at
351  law or in equity.  If Buyer elects to terminate this Contract, the Earnest Money, less any expenses incurred by or on behalf of Buyer,
352  shall be returned to Buyer. Buyer's release of Seller shall not relieve Seller's liability (*if any*) to the Broker assisting Seller pursuant
353  to any listing or other brokerage service agreement between them.

354  **B. Buyer Defaults.**  If Buyer defaults, Seller may: **(1)** specifically enforce this Contract and recover damages suffered by
355  Seller as a result of the delay in the sale of the Property; **(2)** terminate this Contract by written Notice to Buyer, and retain the Earnest
356  Money as liquidated damages and as Seller's sole remedy (the parties recognizing it would be extremely difficult, if not impossible,
357  to ascertain the extent of actual damages caused by Buyer's breach, and that the Earnest Money represents as fair an approximation
358  of such actual damages as the parties can now determine); or **(3)** pursue any other remedy and damages available at law or in equity.
359  If Earnest Money is retained by Seller as liquidated damages, any right or interest of the Broker assisting Seller with respect thereto
360  shall be as set forth in the listing or other brokerage service agreement entered into between them.

361  **14. PREVAILING PARTY.**  In the event of any litigation between the parties pertaining to this Contract, the prevailing party
362  shall be entitled to recover, in addition to any damages or equitable relief, the costs and expenses of litigation, including court costs
363  and reasonable attorney fees. The provisions of this Section shall survive Closing or any termination of this Contract.

364  **15. SELLER'S DISCLOSURE STATEMENT.**  *(check one)*

365  ☑ **A.**  Buyer confirms that before signing this offer to purchase, Buyer has received a completed Seller's Disclosure Statement for
366  this Property.  The Seller's Disclosure Statement is not a substitute for any inspection that Buyer may wish to obtain.  Buyer is
367  advised to address any concerns Buyer may have about information in the Seller's Disclosure Statement by use of conditions to
368  performance under this Contract.

369  ☐ **B.**  Seller agrees to provide Buyer with a Seller's Disclosure Statement within 1 day after the Effective Date. Buyer shall have 3
370  days after delivery of the Disclosure Statement to review said disclosure, or to deliver written Notice of termination to Seller if this
371  Contract is to be terminated, in which case the Earnest Money shall be returned to Buyer.  If Buyer does not timely deliver Notice
372  of termination to Seller, then Buyer shall be deemed to have accepted the Disclosure Statement without objection.

373  ☐ **C.**  No Seller's Disclosure Statement will be provided by Seller.

374  **Seller confirms that the information in the Seller's Disclosure Statement (***if any***) is (or when delivered will be) accurate, to**
375  **the best of Seller's knowledge, as of the Effective Date of this Contract.  Seller will fully and promptly disclose in writing to**
376  **Buyer any new information pertaining to the Property that is discovered by or made known to Seller at any time prior to**
377  **Closing and constitutes an adverse material fact or would make any existing information set forth in the Seller's Disclosure**
378  **Statement false or materially misleading.**

379  **16. LEAD-BASED PAINT DISCLOSURE.**  Buyer has reviewed and signed, if required by law, a Disclosure of Information
380  of Lead-Based Paint and/or Lead-Based Paint Hazards form.

381  **17. FINAL WALK-THROUGH.**  Buyer, its representatives and any inspector whose report prompted a request for repairs,
382  shall have the right to enter and "walk-through" and verify the condition of the Property.  Seller will arrange, at Seller's expense, to
383  have all utilities turned on during the Inspection Period and during this "walk-through" (unless utilities have been transferred to
384  Buyer). If the Property is then vacant, Buyer shall have the right to have the utilities transferred to Buyer within _____ days *(4*
385  *days if none stated)* prior to Closing. This "walk-through" is not for the purpose of conducting any new inspection, but only for

386 Buyer to confirm that: **(1)** the Property is in the same general condition as it was on the Effective Date; and **(2)** repairs agreed upon
387 *(if any)* are completed in a workmanlike manner.  Waiver of any inspection does not waive the right to a "walk-through".  Closing
388 does not relieve Seller of any obligation to complete any repairs agreed upon or required by this Contract.

389      **18. SIGNATURES.**  This Contract may be executed in multiple counterparts, each of which shall be deemed an original, but
390 all of which shall constitute one and the same instrument.  For purposes of executing or amending this Contract, or delivering a
391 Notice pursuant hereto, an approved standard form or other written document which is signed and transmitted by any electronic
392 method deemed valid in accordance with the Missouri Uniform Electronic Transactions Act, including but not limited to by facsimile
393 machine, digital signature or a scanned image, such as a pdf via e-mail, is to be treated as an original signature and document.

394      **19. GOVERNING LAW/CONSTRUCTION.**  This Contract shall be construed in accordance with the laws of the State of
395 Missouri, including the requirement to act in good faith. The terms **"Seller"** and **"Buyer"** may be either singular or plural masculine,
396 feminine or neuter gender, according to whichever is evidenced by the signatures below.  Section captions in this Contract are
397 intended solely for convenience of reference and will not be deemed to modify, place any restriction upon, or explain any provisions
398 of this Contract.  If any one or more provisions contained in this Contract shall for any reason be held to be invalid, illegal or
399 unenforceable in any respect, then such invalidity, illegality or unenforceability shall not be deemed to terminate this Contract or to
400 affect any other provision hereof, but rather this Contract shall, to the fullest extent permitted by law, remain in full force and effect
401 and be construed as if such invalid, illegal or unenforceable provision(s) had never been contained herein; provided, however, that
402 such provision(s) may be referred to in order to determine the intent of the parties.

403      **20. NOTICES.**  Any notice, consent, approval, request, waiver, objection or other communication (collectively, **"Notice"**)
404 required under this Contract (after its acceptance) to be delivered to Seller shall be in writing and shall be deemed to have been
405 delivered to Seller upon delivery thereof to the Broker (or any of its affiliated licensees) assisting Seller, whether as a limited agent
406 pursuant to a listing contract, a designated agent *(if any)* acting on behalf of Seller, a dual agent or transaction broker.  Likewise, any
407 Notice to be delivered to Buyer shall be in writing and shall be deemed delivered to Buyer upon delivery thereof to the Broker (or
408 any of its affiliated licensees) assisting Buyer, whether as a limited agent pursuant to a buyer's agency agreement, a designated agent
409 *(if any)* acting on behalf of Buyer, a dual agent, transaction broker or as a Seller's subagent.  Refusal to accept service of a Notice
410 shall constitute delivery of the Notice.

411      **21. RIDERS.**  The following are attached and incorporated herein as part of this Contract: *(check all that apply)*
412 ☐ Government Loan MSC-2011R          ☑ Other _____MSC-2013R_____   ☐ Other _____
413 ☐ Other _____          ☐ Other _____   ☐ Other _____

414      **22. SPECIAL AGREEMENTS.** *(complete only if applicable)*
415 Contingent upon buyer's assumption of seller's loan at Guaranty Bank
416
417 Contingent on court approval
418
419 Buyer's agent agrees to a 2% commission paid by seller
420
421
422      **23. LICENSEE PERSONAL INTEREST DISCLOSURE.** *(complete only if applicable)*
423 _____ *(insert name of licensee)*
424 is a real estate broker or salesperson, and is *(check one or more, as applicable)*:
425 ☐ a party to this transaction;
426 ☐ a principal of and/or has a direct or indirect ownership interest in ☐ Seller   ☐ Buyer; and/or
427 ☐ an immediate family member of ☐ Seller  ☐ Buyer. *Specify:* _____
428      **24. SOURCE(S) OF BROKER(S) COMPENSATION OR COMMISSION.**
429 *(check one, neither or both, as applicable)* ☑ Seller  ☐ Buyer
430 Seller and Buyer each represent and warrant to the other and to the Broker(s), that the Broker(s) identified in the Brokerage
431 Relationship Section below is (are) the only real estate broker(s) involved in this sale.

432                    *REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*

433     **25. BROKERAGE RELATIONSHIP.** By signing below, Buyer and Seller confirm that disclosure of the undersigned
434     licensee(s) brokerage relationship, as required by law or regulation, was made to the Seller and/or Buyer or their respective agents
435     and/or transaction brokers (as the case may be), by said undersigned licensee(s), no later than the first showing of the Property, upon
436     first contact, or immediately upon the occurrence of any change to their relationship.

437     **Licensee assisting Buyer is a:** *(Check appropriate boxes)*

438     ☑ **Buyer's Limited Agent** (acting on behalf of Buyer)

439     ☐ **Seller's Limited Agent** (acting on behalf of Seller)

440     ☐ **Dual Agent** (acting on behalf of both Buyer & Seller)

441     ☐ **Transaction Broker Assisting Buyer** (not acting on behalf
442     of either Buyer or Seller)

443     ☐ **Subagent of Seller** (acting on behalf of Seller)

444     ☑ *(Also check here if serving as a designated agent)*

445     **Licensee assisting Seller is a:** *(Check appropriate boxes)*

446     ☐ **Seller's Limited Agent** (acting on behalf of Seller)

447     ☐ **Buyer's Limited Agent** (acting on behalf of Buyer)

448     ☐ **Dual Agent** (acting on behalf of both Buyer & Seller)

449     ☐ **Transaction Broker Assisting Seller** (not acting on behalf of
450     either Buyer or Seller)

451     ☐ *(Also check here if serving as a designated agent)*

452     By signing below, the licensee(s) confirm making timely disclosure of its brokerage relationship to the appropriate parties.

453     Carol Jones, Realtors
454     **Broker's Firm Assisting Buyer (and MLS ID No., if required)**     **Broker's Firm Assisting Seller (and MLS ID No., if required)**

455     Broker's Firm State License #    000007113      Broker's Firm State License #    2003023935

456     By *(Signature)* Josh Breyfogle     By *(Signature)* Amber Lutz

      dotloop verified
      02/13/18 7:50PM EST
      BN3G-9IE2-11NP-LEG9

457     Licensee's Printed Name: Joshua Breyfogle     Licensee's Printed Name: Amber Lutz

458     Licensee's State License #   2017029786     Licensee's State License #   2014005960

459     Date: 02-13-2018     Date:

460     **26. FRANCHISE DISCLOSURE.** Although one or more of the Brokers may be a member of a franchise, the franchisor is not
461     responsible for the acts of said Broker(s).

462     **27. SALES INFORMATION.** Permission is hereby granted by Seller and Buyer for the Broker(s) to provide, effective as of
463     and after the Closing, sales information of this transaction, including Purchase Price and Property address, to any multi-listing
464     service, local Association or Board of REALTORS®, its members, member's prospects, appraisers and other professional users of
465     real estate data.

466     **28. FOREIGN INVESTMENT.** Seller represents that it is not a foreign person as described in the Foreign Investment in Real
467     Property Tax Act (26 U.S.C. §1445) and agrees to deliver a certificate at Closing to that effect which contains Seller's tax
468     identification number.

469     **29. ANTI-TERRORISM.** Each party hereto represents and warrants to each other party and to the Broker(s), that such party
470     is not, and is not acting, directly or indirectly, for or on behalf of any person or entity, named as a Specially Designated National
471     and Blocked Person (as defined in Presidential Executive Order 13224), or with whom you are prohibited to do business with under
472     anti-terrorism laws.

473     **30. ACCEPTANCE DEADLINE.** Buyer's offer to purchase the Property from Seller shall automatically expire if Seller has
474     not accepted this offer, in writing, and provided further that communication of that acceptance is made to Buyer, or to the licensee
475     assisting the Buyer by 12:00 p .m., of    February    15th    2018  .

476     **31. TIME IS OF THE ESSENCE. Time is of the essence in the performance of the obligations of the parties under
477     this Contract.** All references to a specified time shall mean Central Time. With the exception of the term "banking days," as
478     used herein, a "**day**" is defined as a 24-hour calendar day, seven (7) days per week.

479     *REMAINDER OF PAGE INTENTIONALLY LEFT BLANK ~ SIGNATURE PAGE TO FOLLOW*

dotloop signature verified
DigiSign Verified: 7236FFC2-304C-4282-98DF-A14909770EA38

480  ### SIGNATURE PAGE TO COMMERCIAL AND INDUSTRIAL REAL ESTATE SALE CONTRACT

481  **BUYER:** *(for a corporation, limited liability company, partnership or other form of legal entity)*

482  _____Backwoods Trust_____          Attest:

483  By: *Adam D Stacey, trustee*

484  Printed Name: Adam Stacey          Printed Name: _____

485  Title: Trustee          Date: _____ Time: _____

486  Date: 02-13-2018 3:22 PM PST      Time: _____

487  **BUYER:** *(for one or more individuals)*

488  _____          _____

489  Buyer          Buyer

490  Printed Name: _____          Printed Name: _____

491  Date: _____ Time: _____          Date: _____ Time: _____

492  **SELLER** *(check one and initial _____)* ☐ rejects ☐ counter offers (Counter Offer Form MSC-2040, which amends
493  the terms of this offer, is attached and incorporated into this Contract).

494  ***By signing below, Seller indicates Seller has ACCEPTED this offer.***

495  **SELLER:** *(for a corporation, limited liability company, partnership or other form of legal entity)*

496  _____417 Rentals LLC_____          Attest:

497  *417 Rentals LLC*   dotloop verified
02/15/18 12:53PM EST
2KCK-1GNN-K234-B8E7

498  Printed Name: _____Chris Gatley_____          Printed Name: _____

499  Title: _____          Date: _____ Time: _____

500  Date: _____ Time: _____

501  **SELLER:** *(for one or more individuals)*

502  _____          _____

503  Seller          Seller

504  Printed Name: _____          Printed Name: _____

505  Date: _____ Time: _____          Date: _____ Time: _____

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

506  ### RECEIPT AND ACKNOWLEDGEMENT

507  **Receipt of the Earnest Money is acknowledged by the undersigned and will be delivered to Escrow Agent for deposit as set
508  forth above.**

509  **By** *(Signature)* _____

510  **Licensee's Printed Name:** _____          Date: _____

Approved by legal counsel for use exclusively by members of the Missouri REALTORS®, Columbia, Missouri. No warranty is made or implied as to the legal validity or
adequacy of this Contract, or that it complies in every respect with the law or that its use is appropriate for all situations. Local law, customs and practice, and differing
circumstances in each transaction, may each dictate that amendments to this Contract be made. **Last Revised 12/31/17.**          **©2017 Missouri REALTORS®**