IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI

In re:

417 Rentals, LLC

Case No. 17-60935
Chapter 11

Debtor.

## FIRST AMENDED PLAN OF REORGANIZATION OF DEBTOR
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

This Plan is prepared and filed by 417 Rentals, LLC, (a Missouri limited liability company) as substantively consolidated Debtor.

Debtor filed this case on August 25, 2017 as case number 17-60935, in the United States Bankruptcy Court for the Western District of Missouri, Southern Division.

## ARTICLE I
### *Definitions*

For the purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined have the meanings ascribed to them in Article 1 of the Plan. Any term used in the Plan that is not defined herein but is defined in the Bankruptcy Code or the Bankruptcy Rules retains the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms include the plural as well as the singular, the masculine gender includes the feminine gender, and the feminine gender includes the masculine gender.

As used in this Plan, the following terms have the meanings specified below.

**1.1 Administrative Claim.** A claim for any cost or expense of administration of the Chapter 11 case allowed under §364(a), (b), (c), 503(b), 507(b) or 546(c)(2) of the Bankruptcy Code and entitled to priority under §507(a)(1) of the Bankruptcy Code, or as otherwise allowed by the Bankruptcy Court and not included in any other classification under the Plan, but including, without limitation: (a) fees payable under 28 U.S.C. §1930; (b) actual and necessary costs and expenses incurred in the ordinary course of Debtor business: and (c) actual and necessary costs and expenses of preserving the Estate or administering the Chapter 11 case, but not including Ordinary Course Administrative Claims or Professional Fees.

**1.2 Allowed Claim.** With respect to any Claim against the Debtor: (a) proof of which, requests for payment of which, or application for allowance of which, was filed or deemed filed on or

before the Bar Date, the Administrative Claim Bar Date, or the Professional Fee Bar Date, as applicable, for filing proofs of claim or requests for payment for Claims of such type against Debtor; or (b) if no proof of claim is filed, which has been or is ever listed by Debtor in the Schedules as liquidated in amount and not disputed or contingent, and, in the case of (a) or (b) a Claim as to which no objection to its allowance has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court. The term "Allowed", when used to modify a reference in the Plan to any Claim or Class of Claims means a Claim (or any Claim **in** any such Class) that is so allowed. If a Claim becomes Allowed by virtue of an order of the Bankruptcy Court, it shall be deemed Allowed upon the order becoming a Final Order.

1.3     **Allowed Priority Claim.**     An Allowed Claim entitled to priority pursuant to §507 of the Bankruptcy Code.

1.4     **Allowed Secured Claim.**     An Allowed Claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under §553 of the Bankruptcy Code, to the extent of the value [determined in accordance with §506(a) of the Bankruptcy Code] of the interest of the Holder of such Allowed Claim in the Debtor interest in such property, or the extent of the amount subject to setoff, as the case may be.

1.5     **Bankruptcy Code or Code.**     United States Bankruptcy Code 11 U.S.C. §101 at seq. and any amendments thereto.

1.6     **Chapter 11 Case.**     The case under Chapter 11 of the Bankruptcy Code in which Debtor is Debtor and Debtor-in-Possession, pending before the Bankruptcy Court.

1.7     **Claim.**     Any "claim" as defined in §101(5) of the Bankruptcy Code and any other debt obligation of whatever character of the Debtor, as of Claims Bar Date, including any accrued and unpaid interest thereon up to that date, and any Claim arising from the rejection of an executory contract or unexpired lease.

1.8     **Confirmation Date.**     The date upon which the Order of Confirmation of this Plan is entered by the Court.

1.9     **Court.**     The United States Bankruptcy Court for the Western District of Missouri in which the Debtor's Chapter 11 case is pending, including any Bankruptcy Judge sitting in said Court, and any Court having competent jurisdiction to review orders of the Bankruptcy Judge or to hear appeals therefrom.

1.10     **Creditor.**     Any Holder of a Claim, whether or not such Claim is an Allowed Claim, encompassed within the statutory definition set forth in §101(10) of the Bankruptcy Code.

1.11     **Disclosure Statement.**     The written disclosure statement relating to the Plan including,

without limitation, all exhibits and schedules to such disclosure statement, in the form approved by the Bankruptcy Court under §1125 of the Bankruptcy Code or Bankruptcy Rule 3017.

    **1.12**    **Effective Date.**    Ten (10) days after the date on which the Order of Confirmation becomes a Final Order and Judgment, all conditions to the effectiveness of the Plan expressly set forth therein have been satisfied fully or effectively waived, and no stay of the Confirmation Order is in effect.

    **1.13**    **Estate.**    The Estate of Debtor created in the Chapter 11 case in accordance with §541 of the Bankruptcy Code.

    **1.14**    **Final Order and Judgment.**    An Order of Judgment of the Court which is no longer subject to appear, review or modification and as to which no appeal, review or modification proceeding is pending.

    **1.15**    **Holder.**    The Person on whose behalf and in whose name a Claim was listed or filed with the Court, or the Person to whom such Claim was last transferred by an Order of the Court substituting the transferee for the prior Holder thereof.

    **1.16**    **Nonpriority Unsecured Claim.**    Any Claim against Debtor as of the Petition Date not secured by a charge against or interest in property of the Estate, excluding: (a) Secured Claims, except that portion, if any, that is unsecured in accordance with §506 of the Bankruptcy Code; (b) Administrative Claims; (c) Ordinary Course Administrative Claims; (d) Priority Tax Claims; (e) Priority Claims; and (f) Claims for Professional Fees.

    **1.17**    **Order of Confirmation.**    The Order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code, and which is no longer subject to appeal, modification or review.

    **1.18**    **Person.**    An individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, government or any agency or political subdivision thereof.

    **1.19**    **Plan.**    This Plan of Reorganization and any duly authorized amendments thereto or modifications thereof.

    **1.20**    **Professionals.**    Those Persons (a) employed in accordance with an order of the Bankruptcy Court under §§327 or 1103 of the Bankruptcy Code and to be compensated for services under §327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court under §503(b) of the Bankruptcy Code.

    **1.21**    **Pro Rata.**    With respect to the Holder of any Claim, Pro Rata shall mean in the same proportion that the amount of the Allowed Claim of such Holder in any class of claims bears to the aggregate amount of all Allowed Claims in such class, including in such aggregate amount bother the Allowed Claims and any then unresolved Disputed Claims as of the date of any distribution payment

pursuant to the Plan.

## ARTICLE II
### *Classification and Treatment of Claims and Interests*

All Claims against the Debtor of whatever nature, whether or not scheduled, liquidated or unliquidated, absolute or contingent, including all Claims arising from transactions of the Debtor or the rejection of executory contracts or unexpired leases of the Debtor, whether resulting in an Allowed Claim or not, shall be bound by and deemed satisfied by the Provisions of the Plan. The Claims and Interests shall be treated as follows:

**2.1** **Class 1, Administrative Claims.** Each Allowed Administrative Claim is to be paid in full in cash (or otherwise satisfied in accordance with the terms of the Plan or the terms agreed to by Debtor and the holder of such Claim) by the Debtor on the latest of: (a) the Effective Date; (b) such date as may be fixed by the Bankruptcy Court; (c) the tenth business day after such claim is Allowed; and (d) such date as the Holder of such Claim and Debtor may agree; or as soon thereafter as is practicable. Administrative Claims must be filed by the Administrative Claim Bar Date or the Holders thereof shall be forever barred from asserting such Administrative Claims against Debtor. This class shall not include fees, interest and costs incurred by over secured creditors during the period of administration.

**2.2** **Class 2, Priority Tax Claims and Other Allowed Priority Non-Tax Claims.**
**Priority Tax Claims.** As set forth more fully in the Plan, unless otherwise agreed by the holder of a Priority Tax Claim and the Reorganized Debtor, each Tax Creditor will receive, in full satisfaction of its Allowed Priority Tax Claim, deferred cash payments totaling the Allowed amount of such Claim over a period not exceeding five (5) years from the Petition Date, as required by the Bankruptcy Code, which period shall conclude on or about August 3, 2022. The Plan provides that payments on the Allowed Priority Tax Claims will be made beginning on the first Semi-Annual Distribution Date following the Effective Date and shall continue to become due on each subsequent Semi-Annual Distribution Date until the Priority Tax Claims are paid in full. The payments on the Allowed Priority Tax Claims shall be made in equal semi-annual installments of principal and simple interest accruing from the Effective Date at the current rate of interest required by law on the unpaid portion of each Allowed Priority Tax Claim (or upon such other terms determined by the Bankruptcy Court to provide the holders of Priority Tax Claims with deferred cash payments having a value, as of the Effective Date, equal to the Allowed amount of such Priority Tax Claims). No payments will be made on account of any penalty arising with respect to or in connection with an Allowed Priority Tax Claim. The Reorganized Debtor will have the right and discretion to pay any Allowed Priority Tax Claim, or any remaining balance of such Priority Tax Claim, in full, at any time on or after the Effective Date, without premium or penalty and without further order of the Court if cash is available to do so.

**Other Allowed Priority Non-Tax Claims.**    Under the Plan, as soon as practicable after the later of the Effective Date and the date the Claim becomes an Allowed Claim, each holder of an Allowed Priority Non-Tax Claim against a Reorganized Debtor will receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Non-Tax Claim a Distribution from the applicable Reorganized Debtor: (i) in Cash equal to the unpaid portion of such Allowed Priority Non-Tax Claim against the Debtor, or (ii) in such amounts and on such other terms as may be agreed between the Holder of the Allowed Priority Non-Tax Claim and the Debtor, or (iii) in accordance with the terms of the particular agreement under which such Priority Non-Tax Claim arose.    To the extent that any Creditor's total Allowed Priority Non-Tax Claim exceeds the amount entitled to Priority treatment under 11 U.S.C. §507, the remaining amount of such claim shall be treated as a Class 16 Allowed Unsecured Claim.  The Debtor does not believe that there are any unpaid Priority Non-Tax Claims to be paid under the Plan.

  2.3  **Classes 3a, 3b, 3c and 3d (the "Class 3 Claims") Consist of the Allowed Secured Claims of Arvest Bank.**  Arvest Bank may hereinafter be referred to as the "Class 3 Claimant".  The Class 3 Claims consist of the following loans: Class 3a, loan #1705360, Class 3b, loan #4064848, Class 3c, loan #4243330 and Class 3d, loan #4319350, hereinafter referred to as the "Class 3 loans".

  Total combined debt on the Class 3 Claims is approximately $1,432,158. The exact balance owing on the Class 3 loans shall be determined by the Court on or before the Effective Date. The Debtor's estimate of the value of the properties securing the Class 3 Claims is approximately $1,484,900. The Debtor intends to treat the Claim as fully secured.  The Class 3 Claims are evidenced by individual notes executed by the Debtor.  The notes are collateralized by the Deeds of Trust conveying interests in real estate owned by the Debtor and assignments of rents.

  The value of the real property or properties collateralized by the Class 3 Claims as well as the estimated liquidated value of the properties collateralized by the Class 3 loans is attached hereto as "**Exhibit 3D**" and incorporated herein by reference.

  The proposed monthly payments to the Class 3 Claimant, approximate loan balances, and contract interest rates on each of the Class 3 loans are attached hereto as "**Exhibit 3C**" and incorporated herein by reference.

  The Class 3 Claims will be paid at the contract interest rate for each Class 3 loan in payments of interest-only for the first 24 months and then be paid at the contract interest rate amortized over 25 years for months 25-60.

  Debtor is attempting to negotiate a stipulation with Arvest Bank. In the event a stipulation is finalized, a copy of the Arvest Bank stipulation will be attached hereto in Exhibit 17 and incorporated

herein by reference. In the event there is a conflict between the terms summarized in this treatment of Class 3 section and an Arvest Bank Stipulation, the terms detailed in the Arvest Bank Stipulation shall prevail.

The combined cash flows within the Debtor's portfolio and of the properties subject to the Class 3 loans provide sufficient revenue to make the above payments. In addition, the Debtor may offer the properties for sale, the revenue from which would significantly reduce or pay in full all or part of the Class 3 Claims. In the event that a tenant is lost, the Debtor's principal has the ability and will supplement the revenue necessary to make the monthly payments.

This class is impaired.

**2.4       Classes 4a, 4b, 4c and 4d ("the Class 4 Claims") Consisted of the Allowed Secured Claims of Bancorp South and are hereby deleted having been determined not to be the property of the estate.**

**2.5       Classes 5a, 5b, 5c, 5d and 5e (the "Class 5 Claims") Consist of the Allowed Secured Claims of Bank of Bolivar.**       Bank of Bolivar may hereinafter be referred to as the "Class 5 Claimant".

The Class 5 Claims consist of the following loans: Class 5a, loan #6.19610, Class 5b, loan #6.19611, Class 5c, loan #6.22081, Class 5d, loan #6.22082, and Class 5e, loan #6.23858, hereinafter referred to as the "Class 5 loans".

The Debtor's estimated fair market value of the real property or properties collateralized by the Class 5 loans as well as the Debtors estimated liquidated value of each of the properties collateralized by the Class 5 loans is attached hereto as "Exhibit 5D" and incorporated herein by reference.

The exact balance owing on the Class 5 loans shall be determined by the court on or before the Effective Date.

The proposed monthly payments to the Class 5 Claimant, approximate loan balances, and contract interest rates on each of the Class 5 loans are attached hereto as "Exhibit 3C" and incorporated herein by reference.

The total debt on the Class 5 loans is approximately $1,136,173, exclusive of prepayment penalties. The exact balance owing on the Class 5 loans shall be determined by the Court on or before the Effective Date. The Debtor has determined the value of the properties securing the Class 5 Claims totals approximately $1,294,600. The Debtor intends to treat the claim as fully secured.

The Class 5 Claims are evidenced by individual notes executed by the Debtor and assignments of rents. The notes are collateralized by future advance deeds of trust conveying interest in real estate owned by the Debtor and assignments of rents.

The Class 5 Claims shall be paid as follows:

The interest rate shall be the contract interest rate of the Class 5 loans for months 1 through 9 following the Effective Date of the plan, with monthly interest-only payments paid to the Class 5 Claimant by Debtor.

Commencing on the 10th month after the Effective Date of the plan and thereafter through the 60th month, the balances due on all Class 5 loans shall amortize on a 25-year schedule at the contract interest rates of the Class 5 loans with monthly payments of principal and interest paid to the Class 5 Claimant by Debtor.

The Class 5 loans shall be due and payable on the first day of the 61st month following the Effective Date of the plan.

Upon the approval of Creditor, which approval shall not be unreasonably withheld, the Debtor may sell properties encumbering the Class 5 loans. Net sales proceeds resultant from property sales shall be payable to the Class 5 Claimant under the terms of the notes executed by the Debtor referenced herein and the deeds of trust securing said notes.

In the event that a tenant is lost, the Debtor's principal has the ability and will supplement the revenue necessary to make the monthly payments.

Debtor proposed that past due 2016 and 2017 real estate taxes approximating $25,550 shall be paid in accordance with the Bankruptcy Code by being fully amortized over 5 years with monthly payments of principal and interest being paid to the taxing authority until paid in full on or before payment in full of the Class 5 Claim. Creditor asserts that 2017 real estate taxes were due and payable in full on December 31, 2017. Both parties reserve the right to argue this issue to and seek an Order of the Bankruptcy Court with respect to this issue. In the event the bankruptcy judge rules that the taxes are to be paid under a measure that is different than proposed by the Debtor, the Debtor shall comply with the ruling of the Court.

The terms and conditions of the treatment of the Class 5 Claimant have been incorporated into a stipulation, hereinafter referred to as the "Bank of Bolivar Stipulation". A copy of the Bank of Bolivar Stipulation is attached hereto in Exhibit 17 and incorporated herein by reference. The terms of the Bank of Bolivar Stipulation are summarized in this treatment of Class 5 section. In the event there is a conflict between the terms summarized in this treatment of Class 5 section and attached Bank of Bolivar Stipulation, the terms detailed in the Bank of Bolivar Stipulation shall prevail. Unless expressly modified by the Bank of Bolivar Stipulation, the terms and provisions of the notes referenced in the above deeds of trust securing said notes and the prior Stipulation for Adequate Protection executed by the parties shall remain in effect and binding upon the parties. Specifically, but without limitation, Debtor agrees that the "future advance" provisions of Paragraph 4 of the following described deeds of trust remain in effect and

binding upon Debtor:

Deed of Trust, dated May 24, 2010, recorded on May 25, 2010 in the Office of the Recorder of Deeds of Greene County, Missouri in Book 2010 Page 019815-10;

Deed of Trust, dated May 24, 2010, recorded on May 25, 2010 in the Office of the Recorder of Deeds of Greene County, Missouri in Book 2010 Page 019816-10; and

Deed of Trust, dated August 27, 2008, recorded on August 29, 2008 in the Office of the Recorder of Deeds of Greene County, Missouri in Book 2008 Page 037040-08.

Upon Creditor's request, Debtor shall execute new promissory notes and other related loan documents consistent with the Bank of Bolivar Stipulation with respect to loans that have expired by their terms or will expire during the time period described in Paragraph 2 of this Stipulation.

This class is impaired.

**2.6     Classes 6a, 6b, 6c and 6d (the "Class 6 Claims") consist of the allowed secured claims of Bank of Missouri.**     Bank of Missouri may hereinafter be referred to as the "Class 6 Claimant".

The Class 6 Claims consist of the following loans: Class 6a, loan #133850, Class 6b, loan #136845, Class 6c, loan #139634, Class 6d, loan #160778, hereinafter referred to as the "Class 6 loans".

Total combined debt on the Class 6 loans approximates $1,388,285.50.  The exact balance owing on the Class 6 loans shall be determined by the Court on or before the Effective Date. The Debtor's estimate of the value of the properties securing the Class 6 claims is approximately ~~$1,008,000~~ $1,952,000.  The debtor intends to treat the claim as fully secured.

The Class 6 claims are evidenced by individual notes executed by the Debtor.  The notes are collateralized by deeds of trust conveying interest in real estate owned by the Debtor and assignments of rents.

The value of the real property or properties collateralized by the Class 6 loans as well as the estimated liquidated value of the properties collateralized by the Class 6 loans is attached hereto as "**Exhibit 6D**" and incorporated herein by reference.

The proposed monthly payments to the Class 6 Claimant, approximate loan balances, and contract interest rates on each of the Class 6 loans are attached hereto as "**Exhibit 3C**" and incorporated herein by reference.

The Class 6 Claims will be paid at the contract interest rate and will be paid monthly in the amount of the contract amortized payments for each Class 6 loan, under the pre-petition payment schedule with a balloon payment due under each loan. The balloon payment due under each loan will be an amount determined by calculating the balances of any pre and/or post-petition principal and interest

payments that were not made, and then arriving at a final balloon payment (if any) on each loan.

The Class 6 Claims will mature on the dates below and the balloon payment will be due on the dates below:

Class 6a loan #133850          05/13/2021

Class 6b loan #136845          03/02/2022

Class 6c, loan #139634          12/20/2022

Class 6d, loan #160778          08/23/2022

The Debtor is attempting to negotiate a stipulation with Bank of Missouri.  In the event a stipulation is finalized, a copy of the of Bank of Missouri stipulation will be attached hereto in Exhibit 17 and incorporated herein by reference In the event there is a conflict between the terms summarized in this Treatment of Class 6 Section and an attached Bank of Missouri Stipulation, the terms detailed in the Bank of Missouri Stipulation shall prevail.

The combined cash flows within the Debtor's portfolio and of the properties subject to the Class 6 loans provide sufficient revenue to make the above payments.  In addition, the Debtor may offer the properties for sale, the revenue from which would significantly reduce or pay in full all or part of the Class 6 Claims.  In the event that a tenant is lost, the Debtor's principal has the ability and will supplement the revenue necessary to make the monthly payments.

This class is impaired.

2.7      **Classes 7a, 7b, 7c, 7d, 7e, 7f, 7g, 7h, 7i and 7j (the "Class 7 Claims") Consist of the Allowed Secured Claims of Great Southern Bank.**      Great Southern Bank may hereinafter be referred to as the "Class 7 Claimant".

The Class 7 Claims consist of the following loans: 7a, loan #96193492, Class 7b, loan #96193506, Class 7c, loan #96195339, Class 7d, loan #96196262, Class 7e, loan #96196270, Class 7f, loan #96272856, Class 7g, loan #96199040, Class 7h, loan #96205792, Class 7i, loan #96212381 and Class 7j, loan #130091769, hereinafter referred to as the "Class 7 loans".

Total combined debt on the Class 7 loans approximates $1,390,582.30.  The value of the properties securing the Class 7 Claims is approximately $1,764,720.  The Debtor intends to treat the claim as fully secured.

The Class 7 Claims are evidenced by individual notes executed by the Debtor.  The notes are collateralized by deeds of trust conveying interests in real estate owned by the Debtor and assignments of rents.

The value of the real property or properties collateralized by the Class 7 loans as well as the estimated liquidated value of the properties collateralized by the Class 7 loans is attached hereto as

"**Exhibit 7D**" and incorporated herein by reference.

**Installment Payments of Great Southern Bank Loans and Tax Escrows.** The Class 7 Claims shall be paid as follows:

The interest rate shall be the contract interest rate of the Class 7 loans for months 1 through 12 following the Effective Date of the Plan, with monthly interest-only payments paid to the Class 7 Claimant by Debtor.

Commencing on the 13th month after the Effective Date of the Plan and thereafter through the 60th month, the balances due on all Class 7 loans shall amortize on a 20-year schedule at the contract interest rate of the Class 7 loans with monthly payment of principal and interest paid to the Class 7 Claimant by Debtor along with tax escrows to sufficiently fund real estate tax liabilities for each property secured by each Class 7 loan. Debtor shall pay all real estate and any other taxes due related to the collateral.

Great Southern Bank shall use existing escrowed funds for real estate taxes related to the above-referenced loans for such taxes when they become due and Debtor shall timely pay the difference to ensure real estate taxes remain current.

All payments shall be mailed to Creditor at the following address: Great Southern Bank, Attention: David Price, PO Box 68, Springfield, Missouri 65801.

Debtor is negotiating a stipulation with Great Southern Bank. In the event a stipulation is finalized, a copy of the Great Southern Bank stipulation will be attached hereto in Exhibit 17 and incorporated herein by reference. In the event there is a conflict between the terms summarized in this treatment of Class 7 section and an attached Great Southern Bank Stipulation, the terms detailed in the Great Southern Bank Stipulation shall prevail.

**Balloon Payment of Great Southern Bank Loans.** The class 7 loans shall all be due and payable on the 61st month following the Effective Date of the Plan by way of a balloon payment to retire all sums due for each loan so all Class 7 loans are paid in full.

**Permission to Sell Secured Properties by Debtor.** The Debtor may sell properties encumbering the Class 7 loans upon pre-approval by Great Southern Bank of the terms of sale and the allocation of the sale proceeds which approval shall not be unreasonably withheld. Net sales proceeds resultant from property sales shall be payable to the Class 7 Claimant under the terms of the individual notes executed by the Debtor referenced in Paragraph 1 herein. Great Southern Bank shall be provided with copies of all sales transaction and closing documents, including HUD-1 Settlement Statements before any property sale closing for its final approval.

**Vacancies in Rental Properties.** In the event that a tenant is lost, the Debtor's principal has the

ability and will supplement the revenue necessary to make the monthly payments. Tenant vacancies shall not be grounds for a suspension of any loan payment due under this stipulation.

**Property Maintenance and Insurance.** Except as otherwise provided herein or as otherwise provided in or authorized by the Bankruptcy Code, Debtor shall make all necessary repairs, maintenance and improvements to the Collateral in the interests of preserving and protecting same and shall promptly respond to redress and cure any deficiencies or complaints by any governmental unit involving code violations or other regulatory requirements. Debtor shall take all reasonable steps to protect the property from vandalism, damage or waste and shall timely secure and winterize any vacant properties to protect against damage caused by weather or vagrant third parties.

The combined cash flows within the Debtor's portfolio and of the properties subject to the Class 7 loans provide sufficient revenue to make the above payments. In addition, the Debtor may offer the properties for sale, the revenue from which would significantly reduce or pay in full all or part of the Class 7 Claims. In the event that a tenant is lost, the Debtor's principal has the ability and will supplement the revenue necessary to make the monthly payment.

This class is impaired.

**2.8    Classes 8a, 8b, 8c, 8d, 8e and 8f (the "Class 8 Claims") Consist of the Allowed Secured Claims of Guaranty Bank.**    Guaranty Bank may hereinafter be referred to as the "Class 8 Claimant".

The Class 8 Claims consist of the following loans: 8a, loan #5100190938, Class 8b, loan #5400228881, Class 8c, loan #5400228909, Class 8d, loan #5400229052, Class 8e, loan #5400229090 and Class 8f, loan #5400229140, hereinafter referred to as the "Class 8 loans".

The total combined debt on the Class 8 loans is approximately $2,106,172. The exact balance owing on the Class 8 loans shall be determined by the Court on or before the Effective Date. The Debtor's estimate of the value of the properties securing the Class 8 claims is approximately $2,473,300. The Debtor intends to treat the claim as fully secured.

The Debtor's estimated fair market value of the real property or properties collateralized by the Class 8 loans as well as the Debtor's estimated liquidated values of the real property or properties collateralized by the Class 8 loans is attached hereto as "Exhibit 8D" and incorporated herein by reference.

The Class 8 Claims shall be paid as follows:

As it relates to loan #8909 and #9140 the interest rate shall be five percent (5%) interest-only for months 1 through 6 following the Effective Date of the plan, with monthly interest-only payments paid to the Class 8 Claimant by Debtor. Commencing on the 7th month after the Effective Date of the plan and

thereafter through the 60th month, the balances due on loan #8909 and #9140 shall amortize on a 25-year schedule at a five percent (5%) interest rate with monthly payments of principal and interest paid to the Class 8 Claimant by Debtor.

As it relates to loan #8881, #0938 and #9052 the interest rate shall be five percent (5%) interest-only for months 1 through 6 following the Effective Date of the plan, with monthly interest-only payments paid to the Class 8 Claimant by Debtor. Commencing on the 7th month after the Effective Date of the Plan and thereafter through the 60th month, the balances due on loan #8881, #0938 and #9052 shall amortize on a 20-year schedule at a five percent (5%) interest rate with monthly payments of principal and interest paid to the Class 8 Claimant by Debtor.

The Class 8 loans shall all be due and payable on or before the 61st month following the Effective Date of the plan.

The Debtor may sell properties encumbering the Class 8 loans. Net sales proceeds resultant from property sales shall be payable to the Class 8 Claimant under the terms of the individual notes executed by the Debtor referenced herein.

The terms and conditions of the treatment of the Class 8 Claimant, although summarized in this treatment of Class 8 section, have been detailed in a stipulation, hereinafter referred to as the "Guaranty Bank Stipulation" a copy of which is attached hereto in Exhibit 17 and incorporated herein by reference. In the event there is a conflict between the terms summarized herein and the attached Guaranty Bank Stipulation, the terms detailed in the Guaranty Bank Stipulation shall prevail.

The combined cash flows within the Debtor's portfolio and of the properties subject to the Class 8 loans provide sufficient revenue to make the above payments. In addition, the Debtor may offer the properties for sale, the revenue from which would significantly reduce or pay in full all or part of the Class 8 Claims. In the event that a tenant is lost, the Debtor's principal has the ability and will supplement the revenue necessary to make the monthly payments.

This class is impaired.

**2.9 Classes 9a, 9b, 9c and 9d (the Class 9 Claims") Consist of the Allowed Secured Claims of Legacy Bank and Trust.** Legacy Bank and Trust may hereinafter be referred to as the "Class 9 Claimant."

The Class 9 Claims consist of the following loans: Class 9a, loan #40001644, Class 9b loan #40003477, Class 9c, loan #40003752 and Class 9d, loan #40003612, hereinafter referred to as the "Class 9 loans".

Total combined debt on the Class 9 loans is approximately $1,475,729.22. The exact balance owing on the Class 9 loans shall be determined by the Court on or before the Effective Date. The

Debtor's estimate of the value of the properties securing the Class 9 claims is approximately $1,627,350. The Debtor intends to treat the claim as fully secured.

The Class 9 claims are evidenced by individual notes executed, by the Debtor. The notes are collateralized by Deeds of trust conveying interests in real estate owned by the Debtor and assignments of rents.

The value of the real property or properties collateralized by the Class 9 loans as well as the estimated liquidated value of the properties collateralized by the Class 9 loans is attached hereto as "**Exhibit 9D**" and incorporated herein by reference.

The proposed monthly payments to the Class 9 Claimant, approximate loan balances, and contract interest rates on each of the Class 9 loans are attached hereto as "**Exhibit 3C**" and incorporated herein by reference.

The Class 9 Claims will be paid at the contract interest rate for each Class 9 loan in payments of interest-only for the first 24 months and then be paid at the contract interest rate amortized over 25 years for months 25-60.

The Debtor is attempting to negotiate a stipulation with Legacy Bank and Trust. In the event a stipulation is finalized, a copy of the Legacy Bank and Trust Stipulation will be attached hereto in Exhibit 17 and incorporated herein by reference. In the event there is a conflict between the terms summarized in this treatment of Class 9 section and an attached Legacy Bank and Trust Stipulation, the terms detailed in the Legacy Bank and Trust Stipulation shall prevail.

The combined cash flows within the Debtor's portfolio and of the properties subject to the Class 9 loans provide sufficient revenue to make the above payments. In addition, the Debtor may offer the properties for sale, the revenue from which would significantly reduce or pay in full all or part of the Class 9 Claims. In the event that a tenant is lost, the Debtor's principal has the ability and will supplement the revenue necessary to make the monthly payments.

This class is impaired.

**2.10    Classes 10a, 10b, and 10c (the Class 10 Claims") Consist of the Allowed Secured Claims of Mid Missouri Bank.** Mid Missouri Bank may hereinafter be referred to as the "Class 10 Claimant."

The Class 10 Claims consist of the following loans:  Class 10a, loan# 322289001, Class 10b loan #322289002, and Class 10c, loan #322289101, hereinafter referred to as the "Class 10 loans".

Total combined debt on the Class 10 loans approximates $912,392.28. The exact balance owing on the Class 10 loans shall be determined by the Court on or before the Effective Date of the plan. The Debtor's estimate of the value of the properties securing the Class 10 claims is approximately $857,400.

The Debtor intends to treat the claim as fully secured.

The Class 10 claims are evidenced by individual notes executed, by the Debtor.

The notes are collateralized by Deeds of Trust conveying interests in real estate owned by the Debtor and assignments of rents.

The value of the real property or properties collateralized by the Class 10 loans as well as the estimated liquidated value of the properties collateralized by the Class 10 loans is attached hereto as "**Exhibit 10D**" and incorporated herein by reference.

The proposed monthly payments to the Class 10 Claimant, approximate loan balances, and contract interest rates on each of the Class 10 loans are attached hereto as "**Exhibit 3C**" and incorporated herein by reference.

The Class 10 Claims will be paid at the contract interest rate for each Class 10 loan in payments of interest-only for the first 12 months and then be paid at the contract interest rate amortized over 20 years for months 13-60.

Debtor is attempting to agree on a stipulation with Mid Missouri Bank.  In the event a stipulation is finalized, a copy of the Mid Missouri Bank Stipulation will be attached hereto in Exhibit 17 and incorporated herein by reference. In the event there is a conflict between the terms summarized in this treatment of Class 10 section and an attached Mid Missouri Bank Stipulation, the terms detailed in the Mid Missouri Bank Stipulation shall prevail.

The combined cash flows within the Debtor's portfolio and of the properties subject to the Class 10 loans provide sufficient revenue to make the above payments. In addition, the Debtor may offer the properties for sale, the revenue from which would significantly reduce or pay in full all or part of the Class 10 Claims.  In the event that a tenant is lost, the Debtor's principal has the ability and will supplement the revenue necessary to make the monthly payments.

This class is impaired.

**2.11    Classes 11a, 11b, 11c and 11d (the Class 11 Claims") Consist of the Allowed Secured Claims of Old Missouri Bank.**  Old Missouri Bank may hereinafter be referred to as the "Class 11 Claimant."

The Class 11 Claims consist of the following loans:  Class 11a, loan #9452, Class 11b loan #9512, and Class 11c, loan #12628, and Class 11d, Loan #10121, hereinafter referred to as the "Class 11 loans".

Total combined debt on the Class 11 loans approximates $1,421,490.85. The exact balance owing on the Class 8 loans shall be determined by the Court on or before the Effective Date. The Debtor's estimate of the value of the properties securing the Class 11 claims is approximately

$1,093,900. The Debtor intends to treat the claim as fully secured.

The Class 11 claims are evidenced by individual notes executed, by the Debtor. The notes are collateralized by deeds of trust conveying interests in real estate owned by the Debtor and assignments of rents.

The value of the real property or properties collateralized by the Class 11 loans as well as the estimated liquidated value of the properties collateralized by the Class 11 loans is attached hereto as "Exhibit 11D" and incorporated herein by reference.

The proposed monthly payments to the Class 11 Claimant, approximate loan balances, and contract interest rates on each of the Class 11 loans are attached hereto as "Exhibit 3C" and incorporated herein by reference.

The Class 11 Claimant shall be paid under the plan as follows:

The interest rate shall be the contract interest rate of the Class 11 loans for months 1 through 12 following the Effective Date of the plan, with monthly interest-only payments paid to the Class 11 Claimant by Debtor.

Commencing on the 13th month after the Effective Date of the plan and thereafter through the 36th month, the balances due on all Class 11 loans shall amortize on a 20-year schedule at the contract interest rate of the Class 11 loans with monthly payments of principal and interest paid to the Class 11 Claimant by Debtor.

The Class 11 loans shall all be due and payable on the 36th month following the Effective Date of the plan.

The Debtor may sell properties encumbering the Class 11 loans. Net sales proceeds resultant from property sales shall be payable to the Class 11 Claimant pursuant to the attached schedule detailing the minimum acceptable release prices for each property. Distribution of sales proceeds shall be under the terms of the individual notes executed by the Debtor referenced herein.

Past due 2016 and 2017 real estate taxes approximating $36,839.39 shall be paid in accordance with the Bankruptcy Code by being fully amortized over 5 years with monthly payments of principal and interest being paid to the taxing authority until paid in full on or before payment in full of the Class 11 Claim.

The terms and conditions of the treatment of the Class 11 Claimant have been incorporated into a stipulation, hereinafter referred to as the "Old Missouri Bank Stipulation". A copy of the Old Missouri Bank Stipulation is attached hereto in Exhibit 17 and incorporated herein by reference. The terms of the Old Missouri Bank Stipulation are summarized in this treatment of Class 11 section. In the event there is a conflict between the terms summarized in this treatment of Class 11 section and attached Old Missouri

Bank Stipulation, the terms detailed in the Old Missouri Bank Stipulation shall prevail.

The combined cash flows within the Debtor's portfolio and of the properties subject to the Class 11 loans provide sufficient revenue to make the above payments. In addition, the Debtor may offer the properties for sale, the revenue from which would significantly reduce or pay in full all or part of the Class 11 Claims. In the event that a tenant is lost, the Debtor's principal has the ability and will supplement the revenue necessary to make the monthly payments.

Minimum Release Prices



| Properties in Portfolio |
| --- |
| 35 |

**Old Missouri Bank**

| Address | Minimum Release Price |
| --- | --- |
| 1022-4 S Lexington Ave | $70,342 |
| 1331 N Brown Ave | $42,205 |
| 1637 W Florida St | $27,467 |
| 1683 E Dale St | $38,856 |
| 1731 W Walnut St | $46,225 |
| 1803 E Crestview St | $50,914 |
| 2020 N Ramsey Ave | $50,914 |
| 208 E Brooks St | $52,254 |
| 637 S Miller Rd | $49,574 |
| 816 S New Ave | $41,535 |
| 10945 N Farm Rd 115 | $50,969 |
| 1150 S Crutcher Ave | $47,571 |
| 130 S Walnut Ave | $36,018 |
| 1876 N Broadway Ave | $27,863 |
| 2006 N Pickwick Ave | $22,426 |
| 2035 N Pickwick Ave | $26,504 |

| | |
|---|---|
| 2564 W Phelps St | $21,067 |
| 2644 W Lombard St | $42,814 |
| 3020 W Elm St | $29,222 |
| 403 Somerset St | $50,969 |
| 434 W Evergreen St | $42,814 |
| 627 N Hillcrest Ave | $33,300 |
| 818 W Scott St | $38,736 |
| 829 N Farmer Ave | $29,902 |
| 944 S New Ave | $35,339 |
| 626 N Phelps Ave | $45,610 |
| 1253 S Brite Ave | $45,610 |
| 1037 N Brown Ave | $42,760 |
| 1112 N West Ave | $20,667 |
| 1607 W Nichols St | $40,622 |
| 1636 W Thoman St | $27,081 |
| 2058 N Grace Ave | $37,771 |
| 2105 N Albertha Ave | $39,909 |
| 2224 N Weller Ave | $41,334 |
| 7033 W Farm Road 106 | $66,278 |
| 314 Gladiola | $22,628 |

This class is impaired.

2.12     **Classes 12a, 12b, 12c, 12d, 12e, 12f, 12g, 12h 12i, and 12j (the Class 12 Claims")** **Consist of the Allowed Secured Claims of Simmons Bank.**   Simmons Bank may hereinafter be referred to as the "Class 12 Claimant."

The Class 12 Claims consist of the following loans:  Class 12a, loan #3016984, Class 12b loan #3017325, Class 12c, loan #3115501 Class 12d loan #3115524, Class 12e, loan #3116262, Class 12f, loan #3116305, Class 12g, loan #4019868, Class 12h, loan #10361726, Class 12i, loan #40001896, and Class 12j, loan #50000476, hereinafter referred to as the "Class 12 loans".

Total combined debt on the Class 12 loans approximates $2,089,631.06. The exact balance owing on the Class 12 loans shall be determined by the Court on or before the Effective Date. The Debtor's estimate of the value of the properties securing the Class 12 claims is approximately $1,852,900.  The Debtor intends to treat the claim as fully secured.

The Class 12 claims are evidenced by individual notes executed by the Debtor.

The notes are collateralized by Deeds of Trust conveying interests in real estate owned by the Debtor and assignments of rents.

The value of the real property or properties collateralized by the Class 12 loans as well as the estimated liquidated value of the properties collateralized by the Class 12 loans is attached hereto as **"Exhibit 12D"** and incorporated herein by reference.

The proposed monthly payments to the Class 12 Claimant, approximate loan balances, and contract interest rates on each of the Class 12 loans are attached hereto as **"Exhibit 3C"** and incorporated herein by reference.

The Class 12 Claims will be paid as follows:

Upon confirmation of the plan, the Debtor shall make interest-only payments to Simmons Bank in the sum of $10,320.00 beginning on the 30th day following the date of confirmation of the plan and on the same day of each month thereafter through the payment date in December, 2018.

Beginning 30 days after the payment date in December, 2018 referenced above, and on the same day of the 34 consecutive months thereafter, the Debtor shall make a monthly payment to Simmons Bank in a sum based on the aggregate amount of the unpaid balance of the Claims amortized on a 20-year term at 6% interest. The Claims shall mature and be due and payable in full in December, 2021 on the monthly payment date, at which time Simmons Bank shall have no obligation to extend, renew or modify the payment terms.

During the plan term, the Debtor is authorized to sell all or such part of the collateral ONLY upon written consent by Simmons Bank as to a satisfactory release price for its lien on the collateral being sold, which shall not be reasonably withheld.

The terms and conditions of the treatment of the Class 12 Claimant have been incorporated into a stipulation, hereinafter referred to as the "Simmons Bank Stipulation". A copy of the Simmons Bank Stipulation is attached hereto in Exhibit 17 and incorporated herein by reference. The terms of the Simmons Bank Stipulation are summarized in this treatment of Class 12 section. In the event there is a conflict between the terms summarized in this treatment of Class 12 section and attached Simmons Bank Stipulation, the terms detailed in the Simmons Bank Stipulation shall prevail.

In the event of a default in any term of this plan stipulation or the loan documents, Simmons Bank may send notice of the default to the Debtor at the Debtor's place of business or such other location as may be agreed. In that event, the Debtor will have 21 days from the date the notice is sent to cure the default. If during that period the default is not cured, Simmons Bank may file a statement of default with the Bankruptcy Court, the filing of which will operate as relief from the automatic stay as to all

collateral.

The combined cash flows within the Debtor's portfolio and of the properties subject to the Class 12 loans provide sufficient revenue to make the above payments. In addition, the Debtor may offer the properties for sale, the revenue from which would significantly reduce or pay in full all or part of the Class 12 Claims.  In the event that a tenant is lost, the Debtor's principal has the ability and will supplement the revenue necessary to make the monthly payments.

This class is impaired.

2.13    Classes 13a, 13b, 13c, 13d, and 13e (the "Class 13 Claims") Consist of the Allowed Secured Claims of Southern Bank, a successor in merger to Southern Missouri Bank of Marshfield. Southern Bank, successor in merger to Southern Missouri Bank of Marshfield may hereinafter be referred to as the "Class 13 Claimant."

The Class 13 Claims consist of the following loans:  Class 13a, loan #60016056, Class 13b loan #60017340, Class 13c, loan #60017489, Class 13d, loan #60017564, and Class 13e, loan #60019096, hereinafter referred to as the "Class 13 loans".

Total combined debt on the Class 13 loans is approximately $1,348,558.15. The exact balance owing on the Class 8 loans shall be determined by the Court on or before the Effective Date. The Debtor's estimate of the value of the properties securing the Class 13 claims is approximately $1,015,000.  The Debtor intends to treat the claim as fully secured.

The Class 13 claims are evidenced by individual notes executed by the Debtor.

The notes are collateralized by Deeds of Trust conveying interests in real estate owned by the Debtor and assignments of rents.

The value of the real property or properties collateralized by the Class 13 loans as well as the estimated liquidated value of the properties collateralized by the Class 13 loans is attached hereto as "**Exhibit 13D**" and incorporated herein by reference.

The proposed monthly payments to the Class 13 Claimant, approximate loan balances, and contract interest rates on each of the Class 13 loans are attached hereto as "**Exhibit 3C**" and incorporated herein by reference.

The Class 13 Claimant shall be paid as follows:

The interest rate shall be the contract interest rate on the Class 13 interest-only for months 1 through 6 following the Effective Date of the plan, with monthly interest-only payments paid to the Class 13 Claimant by Debtor.

Commencing on the 7th month after the Effective Date of the plan and thereafter through the 60th month, the balances due on all Class 13 loans shall amortize on a 25-year schedule payable at the

contract interest rate with monthly payments of principal and interest paid to the Class 13 Claimant by Debtor.

The Class 13 loans shall all be due and payable on or before the 61st month following the Effective Date of the plan.

All other terms and conditions in the notes and deeds of trust remain valid and binding, including Debtor's obligation to pay taxes, insurance and expenses to properly maintain the properties.

The terms and conditions of the treatment of the Class 13 Claimant have been incorporated into a stipulation, hereinafter referred to as the "Southern Bank, successor in merger to Southern Missouri Bank of Marshfield Stipulation" and has been incorporated into the First Amended Plan of Reorganization and an into the First Amended Disclosure Statement as well as any other pleadings required by the Court or which the Debtor determines is necessary to file. A copy of the Southern Bank, successor in merger to Southern Missouri Bank of Marshfield Stipulation is attached hereto in Exhibit 17 and incorporated herein by reference. The terms of the Southern Bank, successor in merger to Southern Missouri Bank of Marshfield Stipulation are summarized in this treatment of Class 13 section.    In the event there is a conflict between the terms summarized in this treatment of Class 13 section and attached Southern Bank, successor in merger to Southern Missouri Bank of Marshfield Stipulation, the terms detailed in the Southern Bank, successor in merger to Southern Missouri Bank of Marshfield Stipulation shall prevail.

The combined cash flows within the Debtor's portfolio and of the properties subject to the Class 13 loans provide sufficient revenue to make the above payments. In addition, the Debtor may offer the properties for sale, the revenue from which would significantly reduce or pay in full all or part of the Class 13 Claims.  In the event that a tenant is lost, the Debtor's principal has the ability and will supplement the revenue necessary to make the monthly payments.

This class is impaired.

**2.14  Classes 14a, 14b, 14c and 14d (the "Class 14 Claims") consist of the allowed Secured Claims of Southern Bank.**  Southern Bank may hereinafter be referred to as the "Class 14 Claimant."

The Class 14 Claims consist of the following loans:  Class 14a, loan #639353, Class 14b loan #661752, Class 14c, loan #1600090324, and Class 14d, loan #635903, hereinafter referred to as the "Class 14 loans".

Total combined debt on the Class 14 loans approximates $1,668,087.00. The exact balance owing on the Class 14 loans shall be determined by the Court on or before the Effective Date. The Debtor's estimate of the value of the properties securing the Class 14 claims is approximately $1,265,800.  The Debtor intends to treat the claim as fully secured.

The Class 14 claims are evidenced by individual notes executed by the Debtor.

The notes are collateralized by Deeds of Trust conveying interests in real estate owned by the Debtor and assignments of rents.

The value of the real property or properties collateralized by the Class 14 loans as well as the estimated liquidated value of the properties collateralized by the Class 14 loans is attached hereto as **"Exhibit 14D"** and incorporated herein by reference.

The proposed monthly payments to the Class 14 Claimant, approximate loan balances, and contract interest rates on each of the Class 14 loans are attached hereto as **"Exhibit 3C"** and incorporated herein by reference.

The Class 14 Claims will be paid as follows:

The interest rate shall be the contract interest rate on the Class 14 interest-only for months 1 through 6 following the Effective Date of the plan with monthly interest-only payments paid to the Class 14 Claimant by Debtor.

Commencing on the 7th month after the Effective Date of the plan and thereafter through the 60th month, the balances due on all Class 14 loans shall amortize on a 25-year schedule payable at the contract interest rate with monthly payments of principal and interest paid to the Class 14 Claimant by Debtor.

The Class 14 loans shall all be due and payable on or before the 61st month following the Effective Date of the plan.

All other terms and conditions in the notes and deeds of trust remain valid and binding, including Debtor's obligation to pay taxes, insurance, and expenses to properly maintain the properties.

The Debtor may sell properties encumbering the Class 14 loans. Net sales proceeds resultant from property sales shall be payable to the Class 14 Claimant under the terms of the individual notes executed by the Debtor referenced herein.

The terms and conditions of the treatment of the Class 14 Claimant have been incorporated into a stipulation, hereinafter referred to as the "Southern Bank Stipulation". A copy of the Southern Bank stipulation is attached hereto in Exhibit 17 and incorporated herein by reference. The terms of the Southern Bank Stipulation are summarized in this treatment of Class 14 section. In the event there is a conflict between the terms summarized in the treatment of Class 14 section and the attached Southern Bank Stipulation, the terms detailed in the Southern Bank Stipulation shall prevail.

The combined cash flows within the Debtor's portfolio and or of the properties subject to the Class 14 loans provide sufficient revenue to make the above payments. In addition, the Debtor may offer the properties for sale, the revenue from which would significantly reduce or pay in full all or part of the Class 14 Claims.  In the event that a tenant is lost, the Debtor's principal has the ability and will

supplement the revenue necessary to make the monthly payments.

This class is impaired.

**2.15    Classes 15a, 15b, 15c, 15d, 15e and 15f (the "Class 15 Claims") consist of the allowed Secured Claims of Systematic Savings Bank.**  Systematic Savings Bank may hereinafter be referred to as the "Class 15 Claimant."

The Class 15 Claims consist of the following loans:  Class 15a, loan #1788, Class 15b loan #6650, Class 15c, loan #6651, and Class 15d, loan #6722, 15e loan #6881 and 15f loan #6817, hereinafter referred to as the "Class 15 loans".

Total combined debt on the Class 15 loans approximates $714,620.78. The exact balance owing on the Class 15 loans shall be determined by the Court on or before the Effective Date. The Debtor's estimate of the value of the properties securing the Class 15 claims is approximately $712,200.  The Debtor intends to treat the claim as fully secured.

The Class 15 claims are evidenced by individual notes executed, by the Debtor.

The notes are collateralized by Deeds of Trust conveying interests in real estate owned by the Debtor and assignments of rents.

The value of the real property or properties collateralized by the Class 15 loans as well as the estimated liquidated value of the properties collateralized by the Class 15 loans is attached hereto as **"Exhibit 15D"** and incorporated herein by reference.

The Class 15 Claims shall be paid as follows:

The interest rate shall be 5% fixed interest for months 1 through 24 following the Effective Date of the plan, with monthly interest-only payments paid to the Class 15 Claimant by Debtor.

Commencing on the 25th month after the Effective Date of the plan and thereafter through the 60th month, the balances due on all Class 15 Claimants Claims shall amortize on a 25-year schedule at an interest rate fixed at Wall Street Journal Prime plus 1%, with monthly payments of principal and interest paid to the Class 15 Claimant by Debtor.

On or about the 61st month following the Effective Date, the Class 15 Claimant shall re-write whatever properties are left under appropriate (normal) terms and conditions as determined by the Class 15 Creditor in its sole discretion.

The Debtor may sell Properties encumbering the Class 15 loans. Net sales proceeds resultant from property sales shall be payable to the Class 15 Claimant under the terms of the individual notes executed by the Debtor referenced herein.

Debtor is attempting to agree on a stipulation with Systematic Savings Bank.  In the event a stipulation is finalized, a copy of the Systematic Savings Bank Stipulation will be attached hereto in

Exhibit 17 and incorporated herein by reference. In the event there is a conflict between the terms summarized in this Treatment of Class 15 Section and an attached Systematic Savings Bank Stipulation, the terms detailed in the Systematic Savings Bank Stipulation shall prevail.

The combined cash flows within the Debtor portfolio and or of the properties subject to the Class 15 loans provide sufficient revenue to make the above payments. In addition, the Debtor may offer the properties for sale, the revenue from which would significantly reduce or pay in full all or part of the Class 15 Claims. In the event that a tenant is lost, the Debtors' principal has the ability and will supplement the revenue necessary to make the monthly payments.

This class is impaired.

**2.16** **Class 16, Allowed Unsecured Claims.** The Class 16 Claims consist of the allowed claims of unsecured creditors. On the Petition Date the unsecured claims totaled $41,022. Undersecured deficiency claims as a result of foreclosures, the amounts of which are undetermined, are included in this Class. The Class 16 Claims will be paid over 5 years without interest.

This class is impaired.

**2.17** **Class 17, Equity Interests.** The Debtor's principal, Chris Gatley will retain his interest in the Debtor.

**ARTICLE III**
*Implementation of the Plan*

**3.1** **Effect of Confirmation.** Upon the entry of an Order of Confirmation, the Debtor shall be vested with all of the property of the Estate, subject only to outstanding liens created and/or recognized by this Plan and free and clear of all other claims, liens, encumbrances, charges and other interests of creditors, and shall be entitled to operate its business and manage its affairs free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules, or any local rules of the Bankruptcy Court and without further order of the Bankruptcy Court, except as otherwise expressly provided under the Plan.

**3.2** **Indemnification Obligations.** Any obligations or rights of the Debtor to indemnify any guarantor pursuant to any agreement, applicable statute or rule of law with respect to any obligation on which either Debtor is the primary obligor will not be discharged or impaired by confirmation or consummation of the Plan, but will survive unaffected by the reorganization contemplated by the Plan and will be performed and honored by the Debtor. The obligations or rights of the Debtor to indemnify its officers, directors, agents and employees and guarantors shall be subordinate to all Allowed Claims and shall not be paid unless and until all Holders of claims of Allowed Claims have been paid in full.

**3.3** **Term of the Plan.** Unless otherwise expressly stated, the term of the Plan shall be five years from the date of confirmation.

**3.4**   **City of Springfield.** The Debtor will adopt procedures designed to address past issues and ensure compliance and effective communications with the City of Springfield. Those procedures include the following:

    (a)    prompt responses to letters of condition concerning dangerous buildings;

    (b)    a schedule for regular mowing and weed extraction from all properties;

    (c)    prompt responses to tenants' complaints about code deficiencies upon occupying the premises;

    (d)    direct communications with Christopher Gatley;

    (e)    arrangement for city inspections; and

    (f)    reduction in the size of the Debtor's portfolio consistent with profitability and operational efficiencies.

## ARTICLE IV
### *Executory Contracts and Unexpired Leases*

**4.1**   **Executory Contracts.** All executory contracts and unexpired leases existing on the date of filing shall be deemed assumed by the Debtor as of the Effective Date, except any executory contract or lease that Debtor' rejection has been approved by the Bankruptcy Court

**4.2**   **Deemed Rejected Contracts or Leases.** No executory contract or lease shall be deemed rejected unless so identified in a filing with the Court.

**4.3**   **Approval of Assumption or Rejection.**   Entry of the Confirmation  Order shall constitute (a) the approval, pursuant to §365(a) of the Bankruptcy Code, of the assumption of the executory  contracts and unexpired leases assumed pursuant to the Plan, and (b) the approval, pursuant to §365(a) of  the Bankruptcy  Code, of the rejection of the executory contracts and  unexpired  leases rejected  pursuant to the Plan. Notwithstanding anything contained herein to the contrary, Debtor shall have the right to add or delete any executory contract or unexpired lease to the schedules filed with the Bankruptcy Court on or before the Effective Date.

**4.4**   **Post-Petition Date Contracts and Leases.** Executory contracts and unexpired leases entered into and other obligations incurred after the Petition Date by Debtor shall be performed by Debtor, as applicable, in the ordinary course of its business.

## ARTICLE V
### *Retention of Liens*

**5.1**   Liens held  by creditors as of the date of filing shall  be retained  and  continue  in full force and effect unless modified or avoided  by motion, a provision of this Plan, or  by Court order after notice and a hearing.

## ARTICLE VI
### *Remedy Upon Default*

**6.1**    In the event of default after confirmation, the creditor entitled to payment which has not been made shall give the Debtor written notice of such failure. Debtor shall have fifteen (15) days after receipt of such notice to cure the default. If a cure is not made, the creditor shall have all rights available under applicable law to collect the debt or to take possession of collateral securing the debt, without the necessity of seeking relief from the Bankruptcy Court.

**6.2**    Debtor reserves the right, this provision notwithstanding, to propose a plan amendment to cure the default.  Such action shall stay any collection effort until further order of the Bankruptcy Court.

## ARTICLE VII
### *Acceptance or Rejection of the Plan*

**7.1**    **Impaired Classes to Vote.** Each Holder of an Allowed Claim in an impaired Class shall be entitled to vote separately to accept or reject this Plan unless such Holder is deemed to accept or reject this Plan. ANY BALLOT NOT INDICATING AN ACCEPTANCE OR  REJECTION WILL  BE DEEMED AN ACCEPTANCE OF THIS PLAN AND ANY HOLDER OF A CLAIM ENTITLED TO VOTE ON THIS PLAN FAILING TO RETURN A BALLOT BY THE VOTING DEADLINE (AS DEFINED IN THE DISCLOSURE STATEMENT) SHALL BE DEEMED TO HAVE VOTED SUCH HOLDER'S CLAIMS TO ACCEPT THE PLAN. Allowed Secured Claims (a) (b) and (c) and Allowed Nonpriority Unsecured Claims are impaired and are entitled to vote. Allowed Administrative  Claims, Allowed Ordinary Course Administrative Claims and  Allowed  Priority Claims are unimpaired,  are deemed to accept, and are not entitled to vote.

**7.2**    **Acceptance by Class of Creditors and Holders of Interests.**  An impaired Class of Holders of Claims shall have accepted this Plan if this Plan is accepted by at least two-thirds  in  dollar amount and more than one-half in number of the Allowed Claims of such Class that have voted to accept or reject this Plan. A Class of Holders of Claims shall be deemed to accept this Plan in the event that no Holder of a Claim within that Class submits a Ballot by the Ballot Date.

**7.3**    **Cramdown.** If any impaired Class of Claims entitled to vote shall not accept this Plan by the requisite statutory majorities provided in §1126(c) of the Bankruptcy Code, Debtor reserve the right to request that the  Bankruptcy Court confirm this Plan  under §ll29(b) of the Bankruptcy Code. With respect to impaired Classes of Claims that are deemed to reject this Plan, Debtor shall request the Bankruptcy Court to confirm this Plan under §l 129(b) of the Bankruptcy Code.

## ARTICLE VIII
### *Miscellaneous*

8.1     **Headings.**  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meaning thereof.

8.2     **Section and Article Reference.**  Unless otherwise specified, all references in the Plan to sections and articles are to sections and articles of the Plan.

8.3     **Severability.**  Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision in the Plan is either illegal on its face or as applied to any Claim, or that any provision in the Plan violates the provisions of § 1123 of the Bankruptcy Code, such provision shall be unenforceable as to the Holder of any Allowed Claim as to which the provision is illegal or unauthorized. Such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any  other provision of the Plan or the power of the Bankruptcy Court, without further notice or hearing, to confirm the Plan with any provision the Bankruptcy Court has determined to be unenforceable deleted.

8.4     **Quarterly Fees to the United States Trustee.**  Debtor shall  pay all quarterly fees payable to the Office of the United States Trustee for Debtor after Confirmation  consistent  with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and 28 U.S.C. §1930(a)(6).

8.5     **Method of Payment.**  Payments of cash required to be made under the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank at the election of the Person making such payment. Whenever any payment or Distribution to be made under the Plan is due on a day other than a Business Day, such payment or Distribution may instead be made, without interest, on the immediately following Business Day.

8.6     **Successors and Assigns.**  The rights, benefits and obligations of any Person or Holder named or referred to in the Plan will be binding upon, and will inure to the benefit of, the heirs, executors, administrators, successors and assigns of such Person or Holder.

### ARTICLE IX
#### *Retention of Jurisdiction*

9.1     **Jurisdiction.**  Notwithstanding the entry of the Confirmation Order  and  the occurrence of the Effective Date, the Bankruptcy Court retains such jurisdiction over the Chapter 11 case on and after the Effective Date as is legally permissible,  including, without limitation, jurisdiction:

(a)     to allow, disallow, determine, liquidate, classify, estimate, or establish   the amount or priority or secured or unsecured  status of any Claim,  including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority  of Claims;

(b)     to adjudicate all claims as to ownership interest in any property of the Debtor or

of this Estate and of any proceeds thereof;

      (c)      to adjudicate all claims or controversies arising out of any purchase, sale or contract made or undertaken by the Debtor during the pendency of this Chapter 11 proceeding;

      (d)      to determine the validity, extent and priority of all liens against property of the Debtor Estate;

      (e)      to determine the value of the property securing any Claim;

      (f)      to grant or deny any applications for allowance of compensation or reimbursement of expenses authorized under the Bankruptcy Code or the plan;

      (g)      to resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which Debtor is parties and to hear, determine, and if necessary liquidate, any Claims arising from or cure amounts related to such assumption or rejection;

      (h)      to decide or resolve any motions, adversary proceedings or contested matters, and to grant or deny any applications or motions involving Debtor that may be pending on the Effective Date;

      (i)      to resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or the obligations of any Holder or Person incurred in connection with the Plan;

      (j)      to consider and approve any modification of the Plan under §1127 of the Bankruptcy Code or under Bankruptcy Rule 3019 and/or any modification of the Plan after substantial consummation as defined in §1101(2) of the Bankruptcy Code;

      (k)      to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to prevent interference by any entity with consummation or enforcement of the Plan, and any transactions related thereto, except as otherwise provided in the Plan;

      (l)      to hear and determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order except as otherwise provided in the Plan;

      (m)      to adjudicate all causes of action or claims of Debtor;

      (n)      to approve settlements of any cause of action or claim of Debtor;

      (o)      to resolve any disputes between Professionals and Debtor in accordance

with Section 3.8;

(p)        to hear and determine such matters and make such orders consistent  with the Plan as may be necessary or desirable to interpret, enforce and carry out the provisions thereof; and

(q)        to enter an order closing the Chapter 11 case.

*Dated at Kansas City, Missouri this 11th day of May, 2018.*

**417 RENTALS, LLC**

By: _____

**Christopher Gatley, Member**

**BERMAN, DeLEVE, KUCHAN & CHAPMAN, LLC**

By: */s/ Ronald S. Weiss*
_____
    Ronald S. Weiss          MO #21215
    Joel Pelofsky            MO #17929
    2850 City Center Square
    1100 Main Street
    Kansas City, Missouri 64105
    Email:  rweiss@bdkc.com
    Email:  jpelofsky@bdkc.com
**ATTORNEYS FOR 417 RENTALS, LLC**
**DEBTOR AND DEBTOR-IN-POSSESSION**