**IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI
(Springfield)**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| 417 Rentals, LLC | ) | Case No. 17-60935-can11 |
| | ) | |
| Debtor | ) | Chapter 11 |
| ─────────────────── | ) | |
| | ) | |
| City of Springfield, Missouri | ) | |
| | ) | |
| Movant | ) | |

## **SPRINGFIELD'S OBJECTIONS TO FIRST AMENDED PLAN AND FIRST AMENDED DISCLOSURE STATEMENT**

Springfield objects to confirmation of the "First Amended Plan of Reorganization of Debtor Under Chapter 11 of the Bankruptcy Code" (Plan) and objects to the "First Amended Disclosure Statement Filed by 417 Rentals, LLC" (Disclosure).

### **The Big Picture**

The purpose of Chapter 11 reorganization "is to restructure a business's finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return for its stockholders." H.R.Rep. No. 595

(1975), *reprinted in* 1978 U.S.C.C.A.N. 6179. *In re Cedar Shore Resort, Inc.*, 235 F.3d 375, 379 (8th Cir. 2000).

This reorganization does not save jobs or produce returns for stockholders. Instead, the plan proposes to continue a business that produces dangerous buildings, nuisance conditions, overgrowth, and unlivable properties. Debt restructuring will only place a band-aid on a gaping wound.

This reorganization is about one man--Chris Gatley. As 417's sole member, he ran the company before filing this case and anticipates running it "post-confirmation." (Plan, p. 4, § IV. Future Management.) Mr. Gatley's operation has been a public menace for years. The menace has continued since 417 filed this case and, if allowed to do so, will continue. Therefore, confirmation is inconsistent with public policy. *11 USC § 1129(a)(5)(A)(ii)*.

Before filing for bankruptcy, Mr. Gatley's operations in Springfield generated:

- 843 nuisance-abatement issues, which include yards containing trash, improperly-stored inoperable vehicles, broken furniture, rotting materials, scrap metal, automobile parts, etc. (**Doc 195**: **Exhibits A** and **B**);

- 405 overgrowth issues (**Doc 195: Exhibits C** and **D**);

- numerous dangerous-building issues, which include open and vacant structures exposed to the elements, vermin, and vagrants; burned-out, dangerous structures; and, insect-saturated rental properties (**Doc 195: Exhibits E** and **F**);

- 307 property-maintenance issues, which include sewage leaking into basements, rotting soffits and gutters in disrepair, broken appliances, caved-in roofs, water-heater issues, etc. (**Doc 195: Exhibits G** and **H**).

- For the above points, see **Doc 195** and sample photographic **Exhibits I**, **J**, and **K**.

417's operation continues as a public menace. Springfield's data concerning 417 now show 946 nuisance-abatement issues, 454 overgrowth issues, numerous dangerous-building properties, and 335 property-maintenance issues. **Exhibits A** through **D**.

### City Resources

Again, this reorganization benefits one person—Chris Gatley. He has operated under his own name and as 417. Apparently, he is now also operating under NewVacancy, LLC and 417.rent. If the court confirms this reorganization, the public

will pay dearly. More public resources will be allocated to holding Mr. Gatley accountable to public policy than will be allocated to any other landlord in the city.

Beginning June 12, 2002, for dangerous buildings alone, Springfield has mailed or recorded 383 notices concerning 417's operations. **Exhibit E-1**. Springfield spends public money to record a lis pendens every time there are administrative proceedings concerning a dangerous building. Springfield also pays for certified mailing for many notices that go out. Regular postage adds up too. Inspectors post at least two notices on properties and spend much staff time tending to 417 properties. The city also pays for title reports for trash-nuisance abatements and dangerous-building proceedings.

For dangerous buildings alone, from the bankruptcy filing on August 25, 2017 to date, Springfield has mailed or recorded 180 notices concerning 417's operations. **Exhibit E-2**. 417 routinely ignores notices, hearings, and responsibility. At a time when 417 should be on its best behavior trying to make it through confirmation, things are worse.

### Neglected Dangerous Buildings

In addition to the dangerous buildings listed as exhibits in Springfield's "Request for Administrative Expenses" and incorporated here by reference, 417 has also neglected other dangerous buildings. **Exhibits F-1** through **F-12**.

### Neglected Nuisance Abatement

In addition to the nuisance-abatement properties listed as exhibits in Springfield's "Request for Administrative Expenses" and incorporated here by reference, 417 has also neglected other nuisance-abatement properties. **Exhibits G-1** through **G-12**.

### Citizen Abuse

*Theresa Radloff*

Theresa Radloff lives in a 417 property. The roof leaks "so bad it floods the room if it rains hard enough." After calling, texting, and in-person complaints, there has been no repair for six months. Black mold is growing on the ceiling. **Exhibit 1**.

*Judy Stalker*

Judy Stalker is 63 years old. She is hearing- and seeing-impaired. She lived in a Gatley house, which had roaches, mice, and termites. She "lost everything and had to start over at the age of 63." **Exhibit 2**. The furnace became faulty and, after four months of complaints, there was no repair.

http://www.kspr.com/content/news/Springfield-landlord-accused-of-violating-a-tenants--411018105.html **Exhibit 3**.

*Jonathan Richter*

Jonathan Richter paid to rent a Gatley property, but when it came time to move in, the home was unfit for human habitation.

http://www.kspr.com/content/news/Springfield-man-wants-his-money-back-says-Gatley-owned-property-unfit-to-live-in-474004843.html  **Exhibit 4**.

*Robin Hurtado*

Robin Hurtado paid a deposit to move into a Gatley property. "The place was still filthy." "There's pee stains over there where someone had come in and peed in the closet."

http://www.kspr.com/content/news/417-Rentals-evicts-family-who-never-moved-into-an-unfit-home-449840113.html **Exhibit 5**.

*Melissa Matthews*

Melissa Matthews is a neighbor to a Gatley property. She watched a pile of trash grow everyday on the property. Police were called to the property 19 times. She took turns with others to watch at night for concern about her children and grandchildren.

http://www.kspr.com/content/news/Squatters-take-over-a-Springfield-neighborhood-447825743.html **Exhibit 6**.

*Kasey Ringwood*

Kasey Ringwood was living in a Gatley house in poor condition. The water heater lacked a proper drainage system. The breaker box was a hazard. The missing garbage disposal's wires were wrapped and nutted leaving an electrocution hazard. There was standing water in the basement to draw bugs. Mice were a problem.

http://www.kspr.com/content/news/Springfield-works-to-hold-landlords-accountable-for-rental-properties-433968853.html **Exhibit 7** ;

and,  http://www.kspr.com/content/news/417-Rentals-not-making-repairs-over-charging-tenant-429795103.html **Exhibit 8**.

*Anthony Tucker*

Anthony Tucker lived in a Gatley property. He was tossed out without notice, warning, or other process.

http://www.kspr.com/content/news/417-Rentals-tosses-man-out-trashes-belongings-without-notice-414305153.html **Exhibit 9**.

*The Insect House*

The insect house was a 417 property at 2100 N. Elizabeth. Its infestation spread to the neighborhood. Residential Property Inspector Joe Curless received written complaints about it from these neighbors:

Dale Milam at 2074 N. Elizabeth. **Exhibits 10** and **11**.

Heidi Hart at 2068 N. Elizabeth. **Exhibit 12**.

Trisha Edmonds at 2110 N. Elizabeth Ave. **Exhibit 13**.

Brandon Moore at 2073 N. Elizabeth. **Exhibit 14**.

Lara Fletcher at 2101 N. Elizabeth. **Exhibit 15**.

## Real-Estate Taxes

For 2015, 2016, and 2017, 417 allowed tax delinquencies to accumulate on its properties to the point of having to redeem them from delinquent-real-estate-tax sales. **Exhibit 16**. This business practice is costly and is one more symptom of an enterprise that lacks viability and should not continue.

## Accountability Elements

The Plan and Disclosure set forth a truncated version of the accountability elements Springfield proffered to 417 in negotiations. It is insufficient. If, somehow, 417 continues in operation, the accountability elements should include:

1. **Notice Evasion**. Chris Gatley will not evade any city notices by refusing to sign for certified mail, change any address where mail can reach him, or use any other device for dodging notice.
2. **Notice Address**. Chris Gatley will personally:
   a. receive, and sign when applicable, all city notices at 417 Rentals, LLC, 5759 W. US Highway 60, Brookline, MO 65619; and,

    b. notify the city in writing where he can receive city notices every time he has an address change.

3. **Dangerous Buildings**. Within 72 hours of receiving a letter of condition about a dangerous building, Chris Gatley will personally:

    a. communicate in writing with the inspector that signed the letter of condition that he has received the letter;

    b. state whether he agrees with the letter and if he:

        i. agrees, the steps he will take to abate the dangerous conditions, which steps will include:

            1. within another 72 hours, written proof that he has a contract with a dangerous-building contractor who will acquire applicable demolition, board-up, building, electrical, plumbing, mechanical, and other permits and perform code-compliant work;

            2. for a demolition, proof that, within another 7 days, the property is razed and clean of all debris;

            3. for a non-demolition, an invitation to the inspector involved to inspect all dangerous-building

abatements performed, which inspection Mr. Gatley will personally attend;

    ii. disagrees, the points of disagreement, which must be:

        1. made in good faith; and,

        2. based on code standards, not personal, subjective standards.

4. **Nuisance Conditions**. Within 72 hours of receiving a check list of nuisance conditions on a property Chris Gatley controls, Mr. Gatley will personally:

    a. communicate in writing with the inspector that signed the check list that he has received it;

    b. state whether he agrees with the letter and if he:

        i. agrees, the steps he will take to abate the nuisance conditions, which steps will include:

            1. his timeline for cleanup;

            2. proof that he has contacted a nuisance-abatement contractor and the arrangements made for abatement;

      3. an invitation to the inspector involved to inspect all nuisance abatements performed, which inspection Mr. Gatley will personally attend;

   ii. disagrees, the points of disagreement, which points must be:

      1. made in good faith; and,

      2. based on code standards, not personal, subjective standards.

5. **Property Maintenance**. Within 72 hours of receiving a letter of property-maintenance-code violations on a property Chris Gatley controls, Mr. Gatley will personally:

   a. communicate in writing with the inspector that signed the letter that he has received it;

   b. state whether he agrees with the letter and if:

      i. he agrees, the steps he will take to comply with property-maintenance codes, which steps will include:

         1. his timeline for effecting maintenance;

      2. proof that he has contacted a property-maintenance contractor and the arrangements made for maintenance;

      3. an invitation to the inspector involved to inspect all property maintenance performed, which inspection Mr. Gatley will personally attend;

   ii. he disagrees, the points of disagreement, which points must be:

      1. made in good faith; and,

      2. based on code standards, not personal, subjective standards.

6. **Overgrowth**. Within 24 hours of receiving an overgrowth letter about any property Mr. Gatley controls, Mr. Gatley will, personally or by agent:

   a. mow and weedeat such property; and,

   b. remove poke weed, poison ivy, poison oak, and poison sumac, and remove all other rank vegetation.

7. **Tenant Occupancy**. Upon moving into a property Mr. Gatley controls, if a tenant discovers a deficiency, i.e., an unworkable furnace, etc., and

the tenant does not wish to remain because of that condition, Mr. Gatley will return any security deposit, but only if notified within 72 hours of the tenant's occupancy. Mr. Gatley will include appropriate language in applicable rental agreements, which he will also file with the court.

8. **Inspections**. Before Mr. Gatley allows a tenant to move into any property Mr. Gatley controls, Mr. Gatley will:

   a. invite a city inspector, in writing, to inspect the property to ensure it complies with current mechanical, electrical, plumbing, structural, and other applicable codes; and,

   b. allow the tenant to move in only with the inspector's written consent certifying that the property is safe and code compliant; or,

   c. be free to allow the tenant to move in if the inspector does not conduct the inspection within 72 hours of the written request.

9. **Portfolio Reductions**. By:

   a. December 31, 2018, Chris Gatley personally, through 417, or through any other entity, will own or control 100 fewer rental living units than owned or controlled on August 25, 2017;

b. December 31, 2019, Chris Gatley personally, through 417, or through any other entity, will own or control 200 fewer rental living units than owned or controlled on August 25, 2017;

c. December 31, 2020, Chris Gatley personally, through 417, or through any other entity, will own or control 300 fewer rental living units than owned or controlled on August 25, 2017;

d. the closing of this bankruptcy, Chris Gatley personally, through 417, or through any other entity, will own or control no more than 25 rental living units.

CITY OF SPRINGFIELD, MISSOURI

*/s/ Duke McDonald*
Duke McDonald
Missouri Bar #36265
Assistant City Attorney
840 Boonville
Springfield, Missouri  65802
(417) 864-1645
(417) 864-1551 fax
dmcdonald@springfieldmo.gov
ATTORNEY FOR SPRINGFIELD

<u>Service Certificate</u>

I certify that on June 28, 2018, the foregoing document was filed with the Court under its ECF System and was served on said date by electronic mail directed to all parties entitled to electronic notice.

*/s/ Duke McDonald*
Duke McDonald
